JOHN H. COLLAMORE v. JOHN H. WILDER, et al.

1. CLAIMS AGAINST ESTATE OF DECEDENT; *Laches of Claimant; Waiver of Right.* Where A. exhibits his demand against the estate of a decedent, by causing a notice and statement of the amount due him to be served upon the administrator, and thereafter takes no further steps to have his demand allowed or established during the administration of the estate, and such administration continues over four years from the date of the letters of administration granted in the case, and said administrator makes a final settlement of such estate, which final settlement is approved by the probate court, and thereon the said administrator is finally discharged, and no claim is made of error, fraud, or concealment as to said final settlement, or the discharge of the administrator, A. cannot maintain his action in the district court against the heirs of the deceased, to whom lands have descended from him, to have his demand adjusted and allowed, and said lands sold to satisfy the same.

2. APPOINTMENT OF ADMINISTRATOR; *Actual Notice; Omission to Publish Notice.* Where a creditor of a decedent has actual notice of the appointment of an administrator, treats with such appointee as the legal administrator, and exhibits to him his demand against the estate of such deceased person, he cannot thereafter complain that he has been misled or prejudiced by the neglect of such administrator to give the notice required by § 74 of ch. 91, Comp. Laws of 1862.

3. ADMINISTRATOR; *Powers and Duties.* An administrator is merely the agent or trustee of the estate of the decedent, acting immediately under the direction of the law prescribing his duties, regulating his conduct, and limiting his powers.

4. —— *Agreement with Creditor.* An agreement between a creditor of an estate and the administrator thereof, to the effect that no further action should be had in Kansas toward the establishment of a demand of the creditor, beyond legally exhibiting to said administrator said claim, until the determination of a suit pending in another state on the same claim against the executor of the same estate, and that the determination of said suit in such other state should settle the matter here, is not binding on the estate, nor on the heirs of said estate.

5. WILL; *Direction to "Pay all Just Debts."* The formal and general language in a will, requiring that all the just debts of a deceased should be paid by his executors out of his estate, cannot be successfully invoked in behalf of a person who, having a just claim against such testator, neglects the legal proof of his demand until more than three years have elapsed after the issuance of letters testamentary, and until after the estate has been finally settled according to the provisions of law, and the administration closed.

*Error from Douglas District Court.*

ACTION commenced by original petition filed in the district court by *John H. Collamore* as plaintiff, against *John H. Wilder,* as administrator of the estate of George W. Collamore, deceased, and the widow and children of said decedent, as defendants, to establish a demand against said estate, and subject certain lands in the hands of said widow and children to the payment of such demand. The defendants demurred, "for that said petition does not state facts sufficient to constitute a cause of action." The district court, at the April Term 1876, sustained the demurrer, and gave judgment against the plaintiff for costs. The plaintiff brings the case here. The averments of the petition are fully stated in the opinion.

*S. O. Thacher,* for plaintiff:

Did the petition state facts sufficient to constitute a cause of action? Of course the petition is taken as confessed, for the purpose of this debate. The nature of the plaintiff's claim grew out of the fiduciary relations of the deceased to him. The funds for which he brought his action were received by the deceased, as agent and trustee for his brother. During the time these funds were being collected by the deceased, the plaintiff was resident in the Empire of France for some seventeen years, up to and prior to November 1863; and during all this time no settlement was ever had by and between the plaintiff and deceased, and no demand for any such settlement was had so far as the Kansas estate is concerned, until July 25th 1866. Said Geo. W. Collamore died August 21st 1863, leaving all the defendants his heirs-at-law, save Wilder, who is administrator. The heirs-at-law at once removed from Kansas to Massachusetts, and ever since have resided away from Kansas. The deceased left a will whereby he appointed Gov. Andrew of Massachusetts, where the bulk of his estate was situated, his executor. This will was probated in Douglas county, on the 3d of May 1864, and Gurdon

Grovenor duly appointed administrator with-the-will-annexed, but he never gave the notice required by law of his appointment. January 29th 1864, Gov. Andrew, in Massachusetts, duly qualified as executor under the will. Two legal representatives of the estate of the deceased then existed in July 1866. But before this, in the courts of Massachusetts, the plaintiff had commenced proceedings to establish his claim against his brother's estate, and these proceedings were pending when the claim was exhibited and demand made here to the legal representative in July 1866. When this was done, as was to be supposed, it was conceded that there ought not to be two litigations prosecuted for the same matter against really the same parties, for the heirs-at-law at the last are the parties directly interested in the amount of claims proven against the estate of the deceased. So it was mutually agreed by the parties that no litigation should take place here, but that the rights of the parties should be determined in the pending suit in Massachusetts. On the 12th of March 1867, Grovenor made a final settlement of his duties here, and was formally discharged in May 1868. The suit in Massachusetts was not determined until February 1874, and after applying all the estate in Massachusetts to the satisfaction of the amount thereby found due the plaintiff, there is still due the plaintiff the sum of over $20,000. The Kansas estate of the deceased, so far as the realty is concerned, is not touched. May 22d 1875, defendant Wilder became administrator *de bonis non* of the deceased, (there having been no other administrator since the discharge of Grovenor,) and thereupon this suit was begun.

1. In the light of the foregoing facts, I suppose the question here is this: Is the debt or demand of plaintiff barred by the statute of limitations? As the last payment made by the deceased was in 1862, and as the funds in his hands were held by him as trustee, it will be conceded that up to the appointment of Grovenor in 1864 the statute had not run. The general statute would not begin to run until a demand, the funds being held in a fiduciary capacity by the deceased

for the plaintiff: 12 Mo. 3, 8; 3 Johns. Ch. 190, 216; 7 Johns.
Ch. 122; 6 Hill, 540; 23 Wend. 528; 33 Conn. 67; 6 Cal. 31.
The demand made upon the administrator, Grovenor, was in
July 1866. Hence no action could have been maintained by
the plaintiff until that time, and the general statute of limi-
tations began then to run. But in March 1867, Grovenor
made settlement of his actions as administrator, and in May
1868 was discharged, and no successor was appointed until
the commencement of this action, and all the heirs-at-law of
the deceased were continuously out of the state. There was
no one to sue. Beyond dispute then, the general statute had
not run when this action was commenced. 3 Kas. 399.

2. No notice of his appointment as administrator was given
by Grovenor, on his appointment in May 1864, as required
by law. His appointment did not start the statute of limita-
tions found in the executors act until such notice was given;
3 Kas. 399; 19 Mo. 259; 19 Cal. 85.

3. The claim of plaintiff below was duly and properly ex-
hibited to the administrator, July 25th 1866. It does not
appear whether the administrator made due return thereof to
the probate court or not: the presumption must be that he
did. The claim or demand being thus exhibited, suspended
the statute of limitations: 36 Mo. 96; 47 Mo. 299; 19 Cal.
98. And again—the claim once legally exhibited to the
administrator cannot be barred. The statute nowhere re-
quires it to be followed at once by an adjudication; and the
petition shows ample reason why no further steps were taken
in Kansas. Surely it needs no words to show that we are
not pleading a promise of the administrator to revive a stale
demand. And if the court will look at *Putnam v. Collamore,*
109 Mass. 509, it will see some of the reasons for the long
delay in Massachusetts, and will be fully apprised of the na-
ture of this litigation in that state.

4. The agreement made by Grovenor with plaintiff, when
the account was presented, that the adjudication in Massachu-
setts should determine the amount of the liability of the es-
tate, estops the defendants from any defense, unless it is one

grounded in the fraudulent acts of the plaintiff.  At least it estops them from any defense save one that tests the merits of the claim.  Both parties acted upon the agreement.  The matters in dispute between the representative of the deceased and the plaintiff covered very long and multiform transactions; and without stopping now more than to refer to the record made in Massachusetts, it is sufficient to say that that record shows how tedious was the work of getting the plaintiff's claim from the tangle in which the decedent had involved them.  I do not care to insist that that adjudication is conclusive upon the estate here, as to amount, or liability, unless the defendants chose to so regard it.  But the fact that the litigation to settle these matters was then pending in Massachusetts, and that both sides agreed to have proceedings here await that decision, makes any attempt to defeat a full inquiry here of the merits of plaintiff's claim inequitable.  The doctrine of estoppel is very well settled in cases of this kind. 2 Pars. on Contr., ch. 4, § 4, p. 801.  In *Home Ins. Co. v. Balt. W. H. Co.*, Cent. Law Journal, March 2d 1877, page 206, the supreme court of the United States seem to hold such an agreement valid. (33 Iowa, 505; 50 N. Y. 538.) Within about nine months from the day the claim was exhibited to him, the administrator made a final settlement in the probate court of his acts, and in less than two years after the exhibition of the claim, he obtained a final discharge.

5. The will left by the deceased required that all his "just debts" should be paid by his executor out of his estate.  Does the statute of limitations run against such a provision?  If the debt is just, does not the law hold this provision for its payment beyond statutes of limitation of all kinds?  Is it not in the nature of a direct disposition of the decedent's estate, for a purpose clearly conscionable, and worthy of the support of the law?  In *Rosenthal v. Renick*, 44 Ill. 202, 206, a clause of a will something like the one at bar, is commented on.  The court say it shows that the testator "intended his devisees should derive nothing from his bounty, until his

creditors had received their dues." That case has many features like the one before the court, and the general tenor of the reasoning fully confirms many of the considerations hereinbefore advanced. The equities involved, to my mind, are all and entirely with the plaintiff.

*S. A. Riggs*, and *J. M. Hendry*, for defendants:

As stated by counsel for plaintiff, the question presented is, was the demand of plaintiff barred by the statute of limitations? The statute applicable to the case is the statute of 1862. Whether the limitation is fixed by § 21 of the civil code, or by § 2 of ch. 27 of laws of 1862, is immaterial in this case.

Counsel for plaintiff assumes that this claim grew out of fiduciary relations between George W. Collamore deceased, and John H. Collamore; that such fiduciary relations are sufficiently pleaded, and that the operation of the statute of limitations was suspended. The only trust exempted from the bar of the statute of limitations is *direct* or *express* trust; Angell on Lim., §§ 166, 178; 6 Johns. Ch. 110; 9 Pick. 242. It will hardly be contended that the claim exhibited to Grovenor as the administrator, and which was the basis of this action, partakes of the nature of an *express* trust. But it may be claimed that the trust involved in the relations between the parties is an *implied* trust — that the operation of the statute of limitation was suspended until demand, and that the facts operating to suspend the statute are sufficiently pleaded. An effort was made in the petition to plead payment, absence of demand, and a new promise — each and all being intended to take the case out of the statute. We claim that such effort has not been successful.

Again: Authorities are numerous, holding that no acknowledgment, however unequivocal, and no promise, however explicit, made by an executor or administrator, will operate to take a case out of the statute. Chancellor Kent uses this language: "Is the heir to be charged, at the mere pleasure of the executor, with the debts of the ancestor? Does it

rest entirely in the discretion of the executor whether the heir is or is not to be permitted to use the statute of limitations which the law has provided as a means of defense against a simple contract demand, which, perhaps, he knows to be unjust, though his ancestor has not left him the requisite proof?" 6 Johns. Ch. 273; Angell on Lim., §§ 263, et seq.; 7 Conn. 176; 1 Wharton, (Pa.) 66; 12 Wheaton, 565. The administrator takes only such powers as are conferred by law. Those who deal with him are bound to take notice of the extent of his powers, and of the limitations imposed by law upon the exhibition, presentation and proof of claims. It is not within the power of the administrator to enlarge the rights of creditors in the matter of the exhibition and proof of demands.

But even if the administrator had the power to make a promise which would take the case out of the statute, the petition alleges no such promise. The agreement alleged contains no express promise to pay. It contains no acknowledgment of existing liabilities. It has none of the elements of the acknowledgment and promise contemplated by § 31 of the civil code of 1862; nor is it the positive and unqualified acknowledgment of liability, with the clear, unequivocal and explicit promise to pay, which Mr. Justice Story holds necessary to remove or suspend the bar of the statute. 1 Peters, 351; Angell on Lim., §§ 230, 231.

If it should be held that a specific demand was necessary to put the statute of limitations in operation, and that such demand must have been made upon Grovenor, the administrator in Kansas, then we claim that such demand was made on the 25th of July 1866, when the claim was exhibited to him by plaintiff; and the statute, beginning to run from that time, was not suspended by the discharge of Grovenor as administrator in May 1868. We are aware that in the case of *Tobey v. Allen,* 3 Kas. 399, this court held that the death of a debtor operates to suspend the statute of limitation until an administrator is appointed, because there must be a party to be sued. But the reason of that decision does not apply in

6—19 KAS.

this case. Upon the death of a debtor there is a period during which certain persons named in the statute are preferred in the matter of taking out administration — when creditors, as such, have no right to apply for, or procure administration — when by the operation of our laws, the right of creditors to sue is absolutely suspended. In the case at bar, plaintiff was in court in Douglas county, having exhibited his demand to the administrator. It was his duty to have followed up his exhibit of his claim with his proof; or if delayed in the production of his proofs, to have asked a continuance of the administration for the purpose of producing such proofs. The purpose of the notice of the final settlement provided for by § 194 of ch. 91, laws of 1862, was, among other things, to enable creditors to make proof of claims duly exhibited. There is no claim that such notice was not given. Further, it was within the power of plaintiff, upon a proper showing, and before his claim was barred by the statute of limitations, to have procured the appointment of an administrator *de bonis non*. Upon these considerations the court will not hold that the discharge of Grovenor operated to suspend the statute. If these views be correct, the statute became a bar on July 25th 1868, or July 25th 1869, as the court may regard the contract a Massachusetts or a Kansas contract. Suit not having been brought until 1875, the question of the *locus* of the contract is not material. But in our view of this case there is no question of demand involved. The allegations of agency or trust are, in our view, not sufficient, under the rules of pleading. It will be conceded that if a trust existed which had grown out of tortious conduct on the part of the deceased, no demand would have been necessary. There is no allegation in the petition which excludes the idea of such a trust; but on the other hand, it appears upon close inspection that the pretended claim, if it really existed, was of this character.

Our view of the claim presented by the pleading, is, that it is an account as to which a perfect right of action existed at the date of the last item; and, admitting the sufficiency of

the allegation of payment in 1862, that the statute was operating on January 1st 1863, eight months prior to the death of George W. Collamore; that under the decision in *Tobey v. Allen*, the statute was suspended from August 21st 1863, to May 3d 1864, when it again began to run; and that the bar was complete on September 8th 1865, if the contract was a Massachusetts contract, and on September 8th 1866 if the contract was a Kansas contract. 41 Penn. St. 482.

It is claimed by counsel for plaintiff, that the exhibition of the claim to Grovenor, administrator, suspended the statute of limitations. If by such proposition it is meant that the due exhibition of a claim suspended the statute limiting the time for proving up in the probate court, claims against an estate, the correctness of the proposition will be conceded. All the cases cited by counsel in his brief go to this point only. But we deny that the exhibition of a demand under the executors-and-administrators act has the effect to suspend the general statute of limitation. The reasoning of this court in *Tobey v. Allen*, supra, seems to us conclusive upon this point.

Again, it is claimed by counsel for plaintiff, that the clause in the will of George W. Collamore directing that all his just debts should be paid out of his estate, created a trust against which the statute of limitations would not run — and 44 Ill., 202, is cited. If such was the meaning of the case cited, it is, we submit, against reason and the weight of authority. 5 Selden, 398; 4 Selden, 362, 370; 7 Conn. 175.

The opinion of the court was delivered by

HORTON, C. J.: This cause comes to this court upon an exception taken by the plaintiff in error to the order of the court below sustaining a general demurrer to the petition filed in that court. It was alleged in said petition, that Geo. W. Collamore, in his lifetime and at his death, was indebted to John

Pleadings, and facts.

H. Collamore, plaintiff, on claims of a fiduciary character, in a sum of more than $100,000, but for which no demand was made till July 25th 1866; that said Geo. W. Collamore died in Kansas on 21st August 1863,

leaving estates in both Kansas and Massachusetts, and leaving all the defendants his heirs-at-law, save John H. Wilder; that in pursuance to his will, John A. Andrew of Massachusetts was duly appointed executor of the estate of said decedent in Massachusetts, by the probate court of Suffolk county, on 29th January 1864; that on 3d May 1864, one G. Grovenor was duly appointed administrator, with the will annexed, by the probate court of Douglas county, in this state, but never gave the notice of his appointment required by section 74, ch. 9, p. 523, laws of 1862; that by his said will, the said George W. Collamore among other things appointed and required that all his "just debts should be paid by his said executor out of his said estate;" that on July 25th 1866, the plaintiff in error exhibited his demand against the estate of Geo. W. Collamore, deceased, to the said G. Grovenor as administrator; that prior to the last-named date, the said John H. Collamore had commenced his action in the supreme judicial court of Suffolk county, Massachusetts, against said John A. Andrew, as executor as aforesaid, to recover and secure the moneys in the account and demand exhibited to said Grovenor; that when said demand was so exhibited to said administrator in Kansas, it was then agreed between the parties that no further action should be had in Kansas beyond legally exhibiting to said administrator said claim, until the determination of said suit in Massachusetts, and that the determination there should settle the matter here; that the suit in Massachusetts was not finally determined until the 28th of February 1874, at which time the supreme judicial court of that state rendered judgment in favor of the plaintiff in error in said action for $73,577.37 damages, and $1,898.31 costs; that on said judgment so rendered in his favor, there was paid about $60,000, leaving due thereon about $20,000; that the estate in Massachusetts was exhausted; that said Grovenor, as said administrator, made his final settlement of the estate of said Geo. W. Collamore, deceased, in Kansas, on March 12th 1867, which final settlement was approved by the probate court of Douglas county, and such adminis-

trator was finally discharged 15th May 1868; that there being a large amount of real estate in Kansas belonging to the said estate of Geo. W. Collamore, deceased, on May 22d 1875 the probate court of Douglas county appointed the defendant in error, John H. Wilder, administrator *de bonis non*, with the will annexed, of said estate of said decedent; that said Wilder duly qualified and accepted such trust, and that between the dates of May 15th 1868, and May 22d 1875, there was no administrator in Kansas; that at the November term 1867 of the district court, in an action then pending between the heirs-at-law of said Geo. W. Collamore, deceased, said John H. Wilder was appointed trustee of the said estate, and accepted such trust, and still remained as such trustee; that all said heirs-at-law of Geo. W. Collamore, deceased, left the state of Kansas in August 1863, and have ever since resided out of the state, and been absent therefrom; that there was no personal property of said estate in Kansas, unadministered upon, but certain real estate remained, a list of which was attached (with a copy of the account sued on) to the petition. The prayer of the petition asked for a full accounting between the parties, for a judgment for the amount that should be found due the plaintiff in error, and for an order and decree to have the real estate described in the petition sold to pay said judgment. The suit was begun in the court below on May 29th 1875.

The question is presented by the record, whether the facts set forth in the petition constituted a cause of action against the defendants in error. In other words, did the court below commit error in refusing to assume jurisdiction of the cause?

We are of the opinion that the failure of Grovenor, as administrator, to give the notice of his appointment, as required by sec. 74, p. 523, laws of 1862, and the subsequent agreement of such administrator as to the suit pending at the time in Massachusetts, do not materially affect the determination of the inquiry presented. The evident purpose of said section 74, is to give all credi-

Administrator's notice.

tors of estates in administration notice of the appointment of an executor or administrator, so that claims can be exhibited within the statutory limitation of three years; but where an administrator has been legally appointed, and a creditor of the estate has actual notice of such appointment, and treats with the person thus appointed as the legal administrator, and exhibits to him, as such administrator, his demand against the estate, such creditor is in no manner misled or prejudiced by the want of said notice. To him such notice is useless, and he cannot complain of its non-publication.

The promise or agreement of the administrator, whereon the plaintiff bases his failure to have his account allowed or established before the discharge of the administrator from his trust, was not binding on the estate, or the heirs-at-law of the decedent. An administrator takes only such powers as are conferred by law, and those who deal with him have notice of his duties and his powers, and of all limitations thereon. He is merely an agent or trustee, acting immediately under the direction of the law regulating his conduct and defining his authority. His duty is to settle his estate according to the terms of the law, and he cannot postpone indefinitely the settlement of an estate, or bind an estate, or the heirs of an estate, by agreeing to the decision of a court to which he, as such administrator, is neither a party nor privy. In contemplation of law, there is no privity between administrators in different states of the same estate. *Jones v. Jones,* 15 Texas, 463; *Stacy v. Tharasher,* 6 How. 44; *Ela v. Edwards,* 13 Allen, 48; *Slanter v. Chenowith,* 7 Ind. 211. Whether the administrator could be held upon the said agreement as his *personal* undertaking, or whether such an agreement would be good cause, if the proper proceedings had been commenced, to have delayed the final accounting and discharge of such administration until the determination of the suit in Massachusetts, we need not now discuss, as these matters are not presented for consideration.

With the non-publication of the notice of the appointment

of Grovenor as such administrator, and the agreement of said administrator as to the suit in Massachusetts eliminated from the record, the sole question remaining is, whether the district court erred in refusing to entertain the said suit against the heirs of the decedent, to whom lands had descended, to have such lands sold to satisfy the claim of a creditor, who, having exhibited his demand during the administration to the administrator, and without any apparent reason had neglected within the prescribed time to pursue his remedy against the estate by having his claim allowed or established, classified and paid, when there were ample assets to pay it off, and after there had been a final accounting and settlement of said estate, and a final discharge of said administrator, and such final discharge of the administrator has not taken place for more than four years after the date of the letters of administration, and no charge is made of error, fraud, or concealment as to the final settlement and discharge of the administrator. The appointment of Wilder as administrator *de bonis non,* without setting aside the prior settlement, and the facts concerning the selection of the same person as a trustee, in a suit between the heirs of Geo. W. Collamore, deceased, do not add anything to the rights of the plaintiff in the premises, or afford additional reasons for the institution of the suit. The matter submitted is one of great practical importance. If the argument of the learned counsel for the plaintiff is to be sustained, then the whole settlement of estates can be transferred from the tribunals specially established by the statute for the administration of estates to the district courts, and that too after the expiration of the three years given for administration, and when a final accounting and settlement have been had in the probate court, from which there has been no appeal, and which remain unassailed on account of any error, or fraud, and having the like validity of any other judgment. Such a conclusion would keep for years unsettled the titles to lands descended to heirs, and estates could be settled, opened, and resettled, without any definite result. Such ought not to be the law, and we

<div style="margin-left:2em; font-size:smaller;">Claims against estate; laches of creditor.</div>

do not think such a purpose is to be gathered from the statute.
While it is true that the statute prescribing the jurisdiction of the district courts is certainly broad enough to give to such courts full chancery and common-law jurisdiction, (and the subject of this action has always been held a subject of chancery jurisdiction,) and while an estate by descent renders the heir liable for the debts of his ancestor to the value of the property descended, still, it has also been equally well settled, that where the property sought to be reached constitutes, as here, assets of a deceased debtor which have already been subjected to administration and distribution under a special tribunal having jurisdiction of the matter, the rule requiring the existence of special circumstances bringing the case under some recognized head of equity should not only be insisted upon with rigor, but some satisfactory excuse should be given for the failure of the creditor to collect his claim in the mode prescribed by law, before final settlement and discharge of the administrator. The question becomes one, not of jurisdiction, but of the exercise of such authority. *Public Works v. Columbia College*, 17 Wall. 521; *Williams v. Gibbes*, 17 How. 239, 255; *Titterington v. Hooker*, 58 Mo. 593; *Littleton v. Addington*, 59 Mo. 275. No valid excuse is here presented for the delay, or rather, non-action, of the creditor after the exhibition of his demand to the administrator. Where claims are exhibited and the estate is solvent, save in exceptional cases, the statute seems to intend that the administration shall continue for three years; and before any final settlement can be had, a notice thereof must be published by the administrator or executor, as the case may be, for four weeks in some newspaper, so that the creditors and all others interested shall be informed as to the time the final settlement is to be made, and such final settlement is a judicial determination, binding upon all the property of the estate, and upon any interest in such property that any person may have as heir, devisee, or legatee. *Shoemaker v. Brown*, 10 Kas. 383. Such final settlement, when not completed till

*Administration; jurisdiction of district courts.*

*Final settlement in probate court.*

more than three years after the letters are granted, is a determination of the settlement of the estate of the decedent, and thereafter, ordinarily, the title of property which has remained undisposed of is not held in abeyance to await the presentation and litigation of other proceedings. In this case, although the final settlement purports to have been had on March 12th 1867, a few weeks less than three years from the date the letters were granted, the administration was kept open till the discharge of the administrator in May 1868, more than four years from the issuance of the letters of administration. The plaintiff in error had ample time and opportunity to have his claim allowed, and the lands subjected to the payment of the same during the lifetime of such administration. This he neglected to do. That he leaned upon a broken reed, in the way of an agreement which the administrator had not the power to make, is a mistake of law on his part for which the courts furnish no relief.

We conclude that a creditor of an estate in the hands of an administrator or executor, must not only exhibit his demand against such estate within the three years prescribed by statute, to obtain any recovery thereon, but he must do something more, and that is, before the final accounting and discharge of the administrator after three years have expired from the date of the granting of letters, he must have his demand allowed or established, and paid from the assets of the estate; and that he cannot merely exhibit his claim to the administrator, and then be passive, and permit the three years of administration to expire, and after a final accounting has been had, the administration closed, and the administrator discharged, seek in the district court to subject the lands descended to the heirs to the payment of his claims. Under such circumstances, the lands ought not thus to be pursued, and the heirs ought not in this way to be harassed; and above all, the titles to lands derived from persons who are dead should not thus be the subject of contest, after the estate has been judicially settled, and the records of the proper tribunal show no allowed or established claims unpaid, and

when all parties have the right to presume that all debts have been paid, and that the lands inherited are relieved from further claims of creditors against the estate of the deceased. Statutes designed to produce a speedy settlement of estates, and the relapse of titles derived under those who are dead, should be stringently enforced; and courts of equity will not relieve parties therefrom, except upon strong and peculiar circumstances.

Counsel for the plaintiff in error finally suggests, that in any event the suit of the said plaintiff is maintainable because of the provision in the will of the deceased re-

Will; terms construed.

quiring that all his "just debts" should be paid. We cannot concede the proposition. The weight of the authority is against the position, and rightly so. Such formal and general language in a will is meaningless, and has no authoritive force. The law compels the payment of all just debts of any decedent, where there are sufficient assets, and the legal steps are pursued to obtain a recovery thereon. Hence, these words give no power to an executor, nor deprive him of any authority. They will not strip an estate of a just defense, nor can a party who neglects a proper presentation and proof of his demand invoke these words successfully to his aid, after he has suffered the estate to be settled and the administration closed. *Peck v. Botsford,* 7 Conn. 176; *Martin v. Gage,* 5 Selden, 398; *Bloodgood v. Bruen,* 4 Selden, 362.

The district court did not err in refusing to exercise its jurisdiction in the case, and therefore the judgment will be affirmed.

All the Justices concurring.