Breyfogle v. Jackson.

---

No. 24,428.

JOHN W. BREYFOGLE, as Trustee of the Estate of J. L. PETTYJOHN & COMPANY, and C. F. PETTYJOHN, Bankrupts, *Appellants*, v. EARL JACKSON, JENNIE JACKSON, and M. S. BRECHEISEN, *Appellees.*

SYLLABUS BY THE COURT.

REAL-ESTATE MORTGAGE—*Paid by Third Party—Payor Not an Intermeddler —Right to Subrogation.* An owner contracted to sell a tract of land on which there was a mortgage lien, and upon payment of the price to convey it free and clear of incumbrances, it being understood that the purchaser would obtain a mortgage on the land and thus obtain the money with which to pay the purchase price. An arrangement was made to obtain a loan on the condition that there should be no other incumbrances of the land. The seller of the land knew that the loan company had agreed to make the loan and he requested and urged the company to hurry the transaction to a completion. In carrying out the transaction the loan company in good faith paid the prior mortgage debt and secured a release of the lien so that the new mortgage should be a first lien on the land, but afterwards it was unable to effect the new loan. The note and mortgage made for the new loan were canceled and returned to the purchaser. *Held,* that while there was no express contract between the seller and the loan company to pay and release the prior mortgage on the seller's land, the loan company

under the circumstances was entitled to subrogation and be adjudged to have the rights of the mortgagee of such prior mortgage.

Appeal from Anderson district court; HUGH MEANS, judge. Opinion filed April 7, 1923. Reversed.

*E. S. McAnany, M. L. Alden, T. M. Van Cleave,* all of Kansas City, *J. N. Parker,* and *G. A. Roberds,* both of Olathe, for the appellants.

*J. Q. Wycoff,* of Garnett, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: In this action the plaintiff asked to be subrogated to the rights of a mortgagee under a mortgage which had been paid and discharged in the course of a real-estate transaction. Early in 1919 M. S. Brecheisen purchased a tract of land which was subject to a mortgage of $1,300. On October 16, 1919, he contracted to sell the land to E. W. McFarland for $10,800, agreeing to convey it to him free and clear of all incumbrances. A cash payment of $620 was made, a second payment of $1,280 was to be made on February 1, 1920, and the balance of the purchase price was to be obtained through a mortgage which McFarland was to execute on the land purchased. Sometime later McFarland contracted to sell the land to Earl Jackson and to give him a clear title to it. He applied to J. L. Pettyjohn & Company, who will be designated as the loan company, for a loan on the land to the amount of $8,400, which the latter approved, and it was stipulated that the land should be clear of other incumbrances. Jackson and wife thereupon executed a note for the $8,400 and a mortgage on the land to secure its payment. To clear up the record so as to complete the loan to Jackson on the terms stated, the loan company paid the $1,300 mortgage which existed on the land and it was released of record. The loan company was unable to negotiate and handle the loan, and the note and mortgage were returned to Jackson. Subsequently the loan company became bankrupt and J. W. Breyfogle was named as trustee of the estate and is asking subrogation to the rights of the mortgagee in the $1,300 mortgage which had been paid and caused to be released upon the Brecheisen land. In addition to the facts stated, the court found that Brecheisen did not authorize or request the payment or release of the $1,300 mortgage and therefore held that the payment and release by the loan company was voluntary and gratuitous and that plaintiff was not entitled to subrogation. Plaintiff appeals.

Breyfogle v. Jackson.

It is said that the dealings in the attempt to mortgage the land and complete the transfer of the same were confined to McFarland, Jackson and the loan company; that Brecheisen, in whose name the title to the land stood, was a stranger to the transaction; that the loan company was a volunteer and intermeddler, and the defendant .invokes the doctrine that a stranger or intermeddler who volunteers to pay the debt of another cannot be subrogated to the rights of a creditor. Can Brecheisen be regarded as a stranger to the transaction involved, and the loan company an intermeddler? In the contract of sale with McFarland, Brecheisen agreed to convey the land free from incumbrances and necessarily contemplated the payment and release of the mortgage on the land before a convey- · ance was made. He learned that McFarland was unable to complete the deal and had transferred his right in the land to Jackson. He knew that Jackson had become the purchaser and had contracted with the loan company for a loan on the land. During the progress of making the loan, and on December 7, 1920, he wrote the loan company, saying:

"In regards. to the loan that you was going to make a loan through Wilson & Russell Land Co. for Mr. Jackson. Now I sold the 180 acres to Mr. Jackson and he is going to pay me when he got his loan, and what is the reason you don't get the loan through. I shure need the money that is back on the loan."

In this letter he recognizes Jackson as the purchaser of the land; that Jackson had an interest in it and a right to mortgage the same, and that the loan company had authority to make and complete the loan, and in the contract for the loan it was stipulated that the land should be free and clear of other incumbrances. In a letter to the loan company written January 25, 1921, he said:

"In regard to the loan that you are making for Mr. Jackson through Wilson & Russell of Colony for 8,400 I told Mr. Jackson that I had to have my money and for him to get same. He said he had all settlements except the loan and if I made him loose his 5,000 he have to pass it on you. I am greatly in need of my money and I will loose money if I have to wait any longer and I shure hate to make Mr. Jackson any expense but I the one that going to loose if there is any more delay. So let me know what you are doing, as Mr. Jackson dont seem to can find out what you are a doing, nor Mr. Wilson and Russell. I sold Mr. Jackson the 180 and he promised to pay me out of the loan what due me yet, on the amount of money 7,000."

In this letter he showed his own interest in the consummation of the loan and that he was to get the remainder of the purchase price of the land out of it, expressly saying that he had sold the

Breyfogle v. Jackson.

land to Jackson, who was to pay him what remained due out of the loan to be made. On the 26th of January, 1921, he wrote the loan company again, as follows:

"I wrote you Monday in regards to Earl Jackson loan the one Wilson & Russell are agents for, the 10 of next month I will loose money if Jackson dont get that money for me. I hate to start to foreclose against Mr. Jackson as I know his condition but if I am going to have a loss and he better. So let me know what you are going to do for him. He said you got all the papers and he cant try any where else as you got him blocked."

From these letters is appears that he was directly interested in effecting the loan which contemplated the clearing of the title of other incumbrances, including the $1,300 mortgage which the loan company paid in order to clear the title and complete the transaction. Under the facts Brecheisen cannot be regarded as a stranger to the transaction, nor has he a right to insist that the loan company is a mere intermeddler and volunteer in the action taken. On his own statement Jackson was the purchaser of his land and he was depending on the loan which the loan company had been employed to make to secure payment of the purchase price. He recognized the right of the loan company to effect a loan and, as his letters show, repeatedly requested and urged it to go on and finish the transaction. To do so it was necessary that the $1,300 mortgage should be paid and released, and this must be held to have been within the contemplation of Brecheisen. To carry out the purpose of all interested parties the mortgage was paid and satisfied of record, and thus the mortgage of Brecheisen was paid and the lien on the land which he was selling was discharged. It was paid by the loan company in good faith, and while the company may not be in strictness an agent of Brecheisen and he had not definitely contracted that it should pay the mortgage, his attitude and statements amounted to a request that the steps necessary to secure the loan should be completed and the sale that he had made carried out and the purchase money paid to him. The right to subrogation does not necessarily depend on a contractual relation between the parties. In *Crippen v. Chappel*, 35 Kan. 495, 11 Pac. 453, it was said:

"But the right of subrogation or of equitable assignment is not founded upon contract alone, nor upon the absence of contract, but is founded upon the facts and circumstances of the particular case and upon principles of natural justice; and generally, where it is equitable that a person furnishing money to pay a debt should be substituted for the creditor or in the place of the creditor, such person will be so substituted." (p. 499.)

There is nothing in the case showing fraud of the parties or a lack of good faith in the loan company in advancing the money for the payment of the mortgage and securing a release of the mortgage lien. In *Olson v. Peterson*, 88 Kan. 350, 128 Pac. 191, quoting from another authority as to substitution, it was said:

"It is merely necessary that his payment should have been made in good faith for the protection of an interest which he believed himself to have in the estate, and in discharge of a burden actually resting upon the property, so that his payment has increased the value of the estate for the benefit of those who turn out subsequently to be entitled to the title." (p. 362.)

Adding:

"The tendency of courts everywhere is to extend rather than to restrict the principle of subrogation, modifying it to meet the circumstances of each case where in' accordance with recognized maxims it should be allowed in equity and good conscience." (p. 363; see, also, *Armstead v. Neptune*, 56 Kan. 750, 44 Pac. 998; *Safe Deposit Co. v. Thomas*, 59 Kan. 470, 53 Pac. 472; *Deposit Co. v. City of Stafford*, 93 Kan. 539-550, 144 Pac. 852; *New v. Smith*, 94 Kan. 6-16, 145 Pac. 880.)'

The authorities are all agreed that the doctrine of subrogation has been devised to promote equity and prevent injustice. In the situation presented, the loan company was in no sense an intermeddler or volunteer; there was a real interest to protect, the payment was made to protect that interest and consummate the purpose of the parties to the transaction. Brecheisen advised and urged the completion of the transaction which necessarily involved the satisfaction and release of the mortgage, and under the circumstances it would be a great injustice to deny subrogation and relieve Brecheisen from the payment of the mortgage lien on his land.

The judgment denying subrogation will be reversed, with directions to enter judgment against Brecheisen for the amount paid to discharge the mortgage debt, and if not paid within a time specified that the lien on the land be reinstated in favor of the plaintiff with all the rights of the mortgagee.