No. 25,746.

Theodore Crane, Jr., as Executor of the Estate of Fannie B. Fisher, deceased, *Appellee*, v. A. R. Daniel, *Appellant*.

SYLLABUS BY THE COURT.

1. Vendor and Purchaser—*Oral Promise to Convey—Rights of Subsequent Purchaser by Quitclaim Deed.* H. and his brother to whom a tract of land was conveyed executed a mortgage thereon to the grantor as the only consideration. About one year later, H. desired to relinquish his interest in the land and be relieved of responsibility. He agreed with the mortgagee to execute a quitclaim deed to his brother E. Soon thereafter H. removed from the land without executing the deed. He had made no repairs on the property, paid no taxes, no interest or principal on the mortgage indebtedness. He made no claim of interest in the land or of rents therefor. The brother paid interest and taxes and executed a renewal of the mortgage. Several years thereafter, H. executed a quitclaim deed to D., purporting to convey a one-half interest in the property. In a suit to foreclose the renewal mortgage executed by H.'s brother, the evidence examined and held sufficient to support a finding that H. had no interest in the land at the time of the execution of the quitclaim to D.

2. Same—*Evidence—Sufficiency.* And further, the evidence considered and held sufficient to support a finding that H. claimed no interest in the land from the time of his removal therefrom.

3. Specific Performance—*Parol Promise to Convey Land.* Where, under the circumstances related in the opinion, H. agreed to execute a deed of conveyance to his brother and did not do so, equity will execute the conveyance for him.

4. Subrogation—*Assignee of Renewal Mortgage.* "Subrogation or equitable assignment is based on principles of natural justice and essential fairness without regard to form—its object being the prevention of injustice" (*Deposit Co. v. City of Stafford,* 93 Kan. 539, 144 Pac. 852); and, where a renewal mortgage has been executed as related in the opinion and assigned to one who holds in good faith, the holder is entitled to be subrogated to the rights of the original mortgagee.

Appeal from Anderson district court; Hugh Means, judge. Opinion filed May 8, 1926. Affirmed.

*Noah Bowman* and *John K. Bowman,* both of Garnett, for the appellant.

*Charles C. Hoge,* of Olathe, and *J. Q. Wycoff,* of Garnett, for the appellee.

The opinion of the court was delivered by

Hopkins, J.: The action was one to foreclose a mortgage. The plaintiff prevailed, and the defendant appeals.

Equity, 21 C. J. p. 200 n. 6. Mortgages, 27 Cyc. p. 1313 n. 13. Specific Performance, 36 Cyc. p. 552 n. 67. Subrogation, 37 Cyc. pp. 365 n. 4, 366 n. 5. Vendor and Purchaser, 39 Cyc. pp. 1303 n. 22, 1612 n. 98, 1691 n. 53, 1784 n. 9.

The facts were substantially as follows: On August 23, 1915, Pettyjohn & Company conveyed the land in controversy to Elmer D. and Harry L. Higginbottom. The only consideration for the conveyance was the execution of a mortgage back to the Pettyjohns on the property for $3,500. The Higginbottoms jointly resided on the land for about a year, at the end of which time Harry went to the office of the Pettyjohns and stated to Mr. Thomas, in charge of the office, that he desired to be released from the deal. He agreed to quitclaim his interest to his brother Elmer. A deed was later prepared and sent to Elmer, but was mislaid and never executed. Harry left the land and moved to Missouri, where he resided for some time. He later returned to Anderson county to other land nearer Garnett. He paid neither interest nor taxes on the land in controversy, nor any of the principal of the mortgage. Neither did he ask nor expect any rent from the farm. Elmer paid part of the taxes, and some interest, but none of the principal. When the mortgage came due, Elmer and his wife executed a renewal mortgage to take its place. On other occasions, Elmer executed other renewals, the amount of the original being divided into smaller mortgages, of which the one sued on in this action for $1,700 was a part. It was assigned by the Pettyjohns to the plaintiff. Taxes became delinquent and a tax deed was issued to one Cynthia Monroe, who conveyed to Charles F. Pettyjohn. Several years later, Harry Higginbottom executed a quitclaim deed to the defendant, who contends that Elmer Higginbottom had no authority to execute the renewal mortgage covering Harry's interest in the land, that the tax proceedings were irregular, that the tax deed conveyed no interest in the land, and that the land is subject to partition; also, that while Harry Higginbottom negotiated with the Pettyjohns for a sale of his interest in the land the sale was never consummated, and that until the time he executed the deed to defendant he always claimed an interest in the land.

The plaintiff contends that since the conveyance to the defendant was by quitclaim deed only, the defendant stands exactly in the position of Harry Higginbottom and with no stronger title; that Harry abandoned the land, and the defendant is estopped to deny that the mortgage sued on is a lien on the whole of the land described; that it was purely a renewal mortgage; that the plaintiff, who is the holder in good faith, should be subrogated to the rights of the original mortgagee; and that any title Harry Higginbottom may have had was eliminated by the tax sale.

It is clear that Harry never in fact paid anything for his interest in the land, and after his statement to Mr. Thomas in Pettyjohn's office that he desired to relinquish his interest and agreed to quitclaim to Elmer, he (Harry) manifested no ownership or interest in the farm. Elmer testified that Harry "just wanted to quit and get out and go. . . . Pettyjohn mailed me a quitclaim deed for Harry and his wife to sign, deeding this farm from Harry and his wife to me, and I lost it, and Harry never signed it." Harry left the farm and went to Missouri. He never returned to the farm, paid neither taxes, interest on the mortgage, nor any of the principal. His every act indicated that he had no interest in the farm. These facts and circumstances and the inferences reasonably to be drawn therefrom were sufficient to support the judgment for the plaintiff. No special findings were made. The general finding of the trial court embraced and determined all matters in plaintiff's favor which may fairly and reasonably be deduced from the evidence; that is to say, it included a finding that Harry claimed no interest in the farm from the time he left it and moved to Missouri, and that he acquiesced in his brother's renewal of the mortgage.

Harry agreed to quitclaim to his brother, and following his removal from the farm he acted precisely and in all respects as though he had done so. Equity regards that as done which should be done, and since Harry failed to execute a conveyance to his brother as he agreed, equity will execute it for him. Under the circumstances, Harry had no interest in the land at the time of the execution of the quitclaim deed to the defendant, and the defendant took nothing thereby. (*Gilmore v. Hoskinson,* 98 Kan. 86, 91, 157 Pac. 426, and cases there cited.)

The renewal mortgages were given to take the place of the one originally executed by the Higginbottom brothers. The plaintiff took an assignment of the mortgage in controversy in all good faith. Under all the circumstances, no good reason appears why he should not be subrogated to the rights of the original mortgagee. The doctrine of equitable subrogation was well treated in *Breyfogle v. Jackson,* 113 Kan. 373, 214 Pac. 779. The principles discussed there (pp. 376-377) are applicable here. (See, also, *Gano v. Martin,* 10 Kan. App. 384, 61 Pac. 460; *Everston v. Central Bank,* 33 Kan. 352, 6 Pac. 605; *Crippen v. Chappel,* 35 Kan. 495, 11 Pac. 453; *Zinkeison v. Lewis,* 63 Kan. 590, 66 Pac. 644; *Warne v. Morgan,* 68 Kan. 450, 75 Pac. 480; *Olson v. Peterson,* 88 Kan. 350, 128 Pac. 191; *Deposit*

*Co. v. City of Stafford,* 93 .Kan. 539, 144 Pac. 852; *Spaulding v. Harvey,* 129 Ind. 106; *Johnson v. Barrett,* 117 Ind. 551; *State Sav. Trust Co. v. Spencer,* 201 S. W. 967 [Mo. App.]; *Sherman v. Yankee Products Corporation,* 194 N. Y. Supp. 705; *Reserve Loan Life Insurance Co. v. Dulin,* 122 N. E. 3, 7 [Ind. App.]; 37 Cyc. 373.)

The judgment is affirmed.

HARVEY, J., dissenting.