Loveland v. Hemphill.

------

No. 26,948.

G. C. LOVELAND, as Administrator, etc., et al., *Appellants*, v. CHARLES W. HEMPHILL, as Ancillary Administrator, etc., et al., *Appellees*.

SYLLABUS BY THE COURT.

1. EXECUTORS AND ADMINISTRATORS — *Foreign and Ancillary Administration — Conclusiveness of Final Settlement—Right of Purchaser Thereunder*. Where a testator, resident of Missouri, died seized of real and personal property in Missouri and in Kansas, and proceedings in administration of his Missouri estate were undertaken by his domiciliary executor, and ancillary administration was instituted in the proper probate court in Kansas, and a Kansas administrator with the will annexed was duly appointed, qualified, and administered the Kansas estate, paid all demands properly presented against the Kansas estate, and remitted the net balance of cash to the domiciliary executor, and received his discharge by the Kansas probate court in accordance with the statutes governing the administration of estates, an action in a Kansas district court by the Missouri administrator and Missouri judg-

------

Courts, 15 C. J. pp. 1022 n. 84, 1023 n. 91. Executors and Administrators, 24 C. J. pp. 336 n. 90, 339 n. 23, 376 n. 12, 925 n. 78, 1037 n. 66, 1111 n. 95, 1140 n. 97.

ment creditors who had totally ignored the administration of the Kansas estate, which action was begun more than two years after the final discharge of the Kansas administrator, and more than two years after the will was duly admitted to probate, and which was designed to subject the Kansas real estate to the satisfaction of plaintiffs' claims, cannot be maintained .against a defendant purchaser for value who held under a conveyance of general warranty from the devisee, and who bought the property relying on the record title, including the record of the probated will and of the closed Kansas administration of the testator's estate, and who was likewise without actual notice or knowledge of the existence of any adverse claim or interest affecting the title.

2. SAME—*Foreign and Ancillary Proceedings—Rights and Title of Purchaser After Final Settlement.* Under the facts recited in syllabus 1, a warranty deed of the Kansas land devised by the testator, executed by his devisee under the testator's will which was duly probated in Kansas, after the settlement of the testator's Kansas estate and the final discharge of the Kansas administrator, conveyed to the grantee an indefeasible title against claimants whose rights were barred under the Kansas statute and concerning whose rights the grantee had neither actual nor constructive notice.

3. SAME—*Foreign 'and Ancillary Proceedings—Actions Attacking Considered.* Various objections to a judgment in favor of a purchaser of Kansas land who acquired it in reliance on the record of title, testament, and probate proceedings and administration, considered, and not sustained.

Appeal from Leavenworth district court; JAMES H. WENDORFF, judge. Opinion filed February 12, 1927. Affirmed.

*W. W. Hooper,* of Leavenworth, and *H. T. Williams,* of Sedalia, Mo., for the , appellants.

*C. H: Ewald, A. E. Dempsey,* both of Leavenworth, *John T. Harding, D. A. Murphy,* and *R. C. Tucker,* all of Kansas City, Mo., for the appellees.

The opinion of the court was delivered by

DAWSON, J.: .This was an action to subject a half section of Leavenworth county land to the payment of claims of Missouri judgment creditors of the estate of the late John T. Loveland, of Pettis county, Missouri, who died in 1919 seized of real and personal property in both Missouri and Kansas, including the Kansas land involved in this action.

Administration of Loveland's estate was timely begun in Missouri and ancillary administration was also undertaken in Kansas. The later administration was seasonably wound up and the ancillary estate closed, and the Kansas administrator discharged before the claims of certain creditors presented in Missouri against Loveland's estate had been adjudicated.

Plaintiffs are the Missouri administrator and these Missouri judgment creditors.

Defendants are the former ancillary administrator, certain legatees and devisees under Loveland's will, and other claimants to and parties interested in the Kansas land sought to be subjected to the payment of plaintiffs' claims.

The principal defense was that following the death of Loveland, testate, his will was probated in Missouri and his testamentary executor qualified, and later an administrator with the will annexed was appointed to succeed the executor, deceased; that ancillary administration was timely instituted in Leavenworth county, Kansas, and Charles W. Hemphill was appointed ancillary administrator with the will annexed; that Hemphill qualified and served, and paid all bills exhibited and allowed by the Leavenworth county probate court, and that he closed and settled the ancillary administration and estate in some two years and two months, and by order of court remitted the net balance of funds in his hands, $370, to the Missouri executor, and received his final discharge, all in conformity with the law of this state.

Following the final settlement of the Kansas estate and the discharge of the ancillary administrator, Nellie Elliott, *née* Schenck, devisee of the Kansas land, conveyed it by warranty deed subject to existing incumbrances to John E. Fox. At Loveland's death the New England Securities Company held a first mortgage on the Kansas real property for $14,500 with interest due thereon, $797.50; also a second mortgage for a balance of $507.50; and taxes due on the land and unpaid, $196, aggregating $16,001 in incumbrances. Fox, the grantee, executed a mortgage for $16,000 to the New England Securities Company to pay these liens, and thereafter Fox borrowed $20,000 from the Joint Stock Land Bank of Kansas City with which the $16,000 indebtedness due the New England Securities Company was extinguished. These and related facts set out in the pleadings and exhibits occupy some sixty-five printed pages of the abstract, but with the foregoing statement the legal problems of present importance may be sufficiently developed by the following chronological summary of facts and events:

*December 2, 1919,* John T. Loveland, of Pettis county, Missouri, died testate, owning real and personal property in Missouri. His Missouri estate eventually proved to be insolvent. He also owned real and personal property in Kansas, the Kansas real estate being

heavily mortgaged to the New England Securities Company and incumbered with unpaid taxes.

*December 26, 1919,* Loveland's will was admitted to probate in Pettis county, Missouri. The will devised small bequests to relatives, the residuary estate to Nellie Schenck, and named John A. Collins, of Pettis county, Missouri, as executor. Collins qualified and served until his death on February 14, 1924, when he was succeeded as administrator with the will annexed by G. C. Loveland, who qualified and has since served.

*January 5, 1920,* ancillary administration was begun in Kansas; Charles W. Hemphill was appointed by the probate court of Leavenworth county as ancillary administrator with the will annexed. Hemphill qualified and served; he paid all demands presented against the estate, including inheritance tax and costs of administration, and transmitted the net balance of funds in his hands, $370, to the Missouri executor as by the probate court directed.

*March 14, 1922,* Hemphill received his final discharge as ancillary administrator.

*May 1, 1922,* Nellie Elliott, *née* Schenck, by warranty deed conveyed the Kansas land to John E. Fox subject to some $16,000 of incumbrances, mostly due the New England Securities Company.

*May 19, 1922,* Fox executed a mortgage of $16,000 to the New England Securities Company to pay off the outstanding incumbrances on the property.

*October 1, 1922,* Fox borrowed $20,000 from the Joint Stock Land Bank of Kansas City, giving it a mortgage on the property to secure the loan, and $16,000 of this sum was used to extinguish the prior lien of the New England Securities Company.

*May 8, 1924,* the Missouri administrator and certain Missouri creditors holding claims allowed by the Missouri probate court and upheld by Missouri courts of competent jurisdiction filed in the probate court of Leavenworth county, Kansas, duly authenticated copies of those claims and requested their allowance and an order of court for the sale of the Kansas property to satisfy them. This the Leavenworth probate court refused to do on the ground that the estate had been finally closed and that it was without jurisdiction. This belated proceeding before the probate court was dropped, and—

*November 4, 1924,* this action was begun. By it the Missouri administrator and the creditors sought to invoke the equity powers of a court of general jurisdiction to have the Kansas property sub-

Loveland v. Hemphill.

jected to the payment of the claims of the Missouri creditors. Plaintiffs' petition, with its amendments and exhibits, narrated part of the foregoing facts, and the answers and exhibits of defendants supplied the other material facts.

Plaintiffs' petition pleaded other matters of fraud and collusion (of which there was no proof and therefore need not be stated) and further alleged:

"Plaintiffs further allege that they and each of them did on or about the 8th day of May, 1924, present and file in the probate court of Leavenworth county, Kansas, a duly authenticated copy of their claims as allowed by the probate court of Pettis county, Missouri, in the form and manner as provided by the laws of Kansas, and have requested the probate court of Leavenworth county, Kansas, to allow the same, and to order the real estate mentioned therein and which belongs to said estate sold; and the proceeds derived from any such sale, applied to the payment of their claims, which the probate court of Leavenworth county, Kansas, refuses to do for the reason and on the grounds that said estate has been finally closed in said court, and that it has no further jurisdiction in the premises."

The petition concluded with a prayer for equitable relief, and suggesting in detail what plaintiffs conceived that relief should be.

The defendant, Charles W. Hemphill, answered, reciting the facts of his ancillary administration, begun on January 5, 1920, his appointment and qualification, his final settlement and discharge March 14, 1922.

Defendant John E. Fox answered, reciting the facts of the Kansas ancillary administration, setting up a copy of the order of final settlement, the discharge of the ancillary administrator by the Leavenworth county probate court, March 14, 1922. And—

"For further answer . . . this defendant avers that the proceedings in the probate court of Leavenworth county, Kansas, were regular and legal; that no claim mentioned or set up by the plaintiffs in their petition herein was exhibited to said Hemphill as administrator, or otherwise, and that no such claim was proved up or attempted to be proved up in the probate court of Leavenworth county, Kansas, within two years from the notice of appointment of said Hemphill as such administrator, or at all, and that each and all of the pretended claims of the plaintiffs herein are and were on the date of the filing of plaintiffs' petition herein barred by the statute of nonclaim, then in force, same being section 22-702, Revised Statutes of Kansas, 1923."

Defendant Fox further answered, alleging that in reliance on the records and proceedings in the probate court of Leavenworth county, and without knowledge of plaintiffs' claims, he purchased

the Kansas land from Nellie Elliott, *née* Schenck, Loveland's devisee, and his subsequent entrance and occupancy of the premises.

The Kansas City Joint Stock Land Bank answered, reciting the facts concerning Loveland's death, the contents of his will, the Missouri administration, the Kansas ancillary administration, and setting up in detail the facts concerning the encumbrances on the property at Loveland's death, the disposition and eventual extinguishment of those encumbrances by its loan of $20,000 to Fox, and the mortgage it held on the property as security therefor. The bank claimed the right of an innocent encumbrancer and also by subrogation to the rights of those who had held liens in the property at Loveland's death and which had been satisfied out of its $20,000 loan.

On this joinder of issues the cause was tried. The oral testimony for plaintiffs developed nothing of controlling significance, nothing to support plaintiff's allegations of fraud and collusion touching the final settlement of the Kansas estate and the discharge of the ancillary administrator, and nothing to show notice or knowledge on the part of Fox or the Joint Stock Land Bank touching the status of the Missouri estate. The oral testimony did show that the devisee, Nellie Elliott, *née* Schenck, was a litigant and represented by counsel in the Missouri litigation.

Defendants' demurrer to plaintiffs' evidence was overruled, and defendant Fox testified in detail touching his acquisition of the land for $32,000, of which he paid $5,000 in cash, and gave the devisee a second mortgage for the remainder, less the encumbrances which were disposed of as already stated, and that he had made the later payments of $500 and $1,500 on the second mortgage. That the total encumbrances including taxes, which he satisfied, aggregated $16,549.10.

The trial court found generally for defendants and judgment was rendered accordingly.

Plaintiffs appeal.

They first argue that they did not have to come into the Kansas jurisdiction within the time the ancillary administration "was open and litigate their claims." In this they are partly correct. They did not have to litigate, or rather relitigate, their claims in Kansas after having had them duly probated and allowed in Missouri, and certainly not after such claims were vindicated by the judgments in Missouri courts of competent jurisdiction. But the point that

those claims did not have to be relitigated in Kansas does not settle the question whether such claims so probated, allowed, and adjudicated in Missouri should or should not have been presented to the Kansas ancillary administrator for payment. Our pertinent statutes read:

"R. S. 22-301. . . . and when any person shall die intestate in any other state or country, leaving any estate to be administered in this state, administration thereof shall be granted by the probate court of any county in which there is any estate to be administered. . . .

"R. S. 22-701. All demands against the estate of any deceased person shall be divided into the following classes: . . . Fifth, all demands without regard to quality, which shall be legally exhibited, against the estate within one year after the granting of the first letters on the estate. Sixth, all demands thus exhibited after the end of one year, and within two years after letters granted.

"R. S. 22-702. All demands not thus exhibited within two years shall be forever barred, saving to infants, persons of unsound mind, imprisoned or absent from the United States, one year after the removal of their disabilities. . . .

"R. S. 22-708. The probate court shall have jurisdiction to hear and determine all demands against any estate; . . .

"R. S. 22-727. No executor or administrator, after having given notice of his appointment as provided in this act, shall be held to answer to the suit of any creditor of the deceased unless it be commenced within two years from the time of his giving bond.

"R. S. 22-729. Any creditor of the deceased whose right of action shall not accrue within the said two years after the date of the administration bond, may present his claim to the court from which the letters issued at any time before the estate is fully administered; . . .

"R. S. 22-907. That executors and administrators of estates of deceased persons shall make final settlement of the same before the probate court within thirty days after the expiration of two years after the date of their legal qualification as such: *Provided,* That upon proper showing, the court may grant such extension of time for making such final settlement as may be deemed expedient or necessary. . . .

"22-915. When the account is settled in the absence of any person adversely interested, and without actual notice to him, the account may be opened on his filing exceptions to the account at any time within six months thereafter; . . .

"22-930. When administration shall be granted in this state on the estate of any person who at the time of his decease was an inhabitant of any other state or country, such estate shall be administered and distributed according to the laws of this state; and the balance in the hands of the administrator on final settlement, to which the foreign executor or administrator of said deceased may be entitled, shall be paid over to such foreign executor or administrator upon the order of the court.

"R. S. 22-1101. Appeals shall be allowed from the decisions of the probate court, to the district court, in the following cases:

"First. On all demands against an estate exceeding twenty dollars.

"Second. On all settlements of executors and administrators.

"Sixth. On all orders for the sale of real estate.

. . . . . . . . . . . . . . . .

"And in all other cases where there shall be a final decision of any matter arising under the jurisdiction of the probate court.

"R. S. 22-1102. All appeals shall be taken within thirty days after the making of such decision."

Other related and significant provisions of statute are R. S. 22-329, 22-501, 22-601, 22-706, 22-712, 22-801, 22-904, 22-906, 22-915, but it is unnecessary to reproduce them here.

A careful perusal of these provisions of statute will show that the rights of plaintiffs were adequately susceptible of protection under the Kansas administration. The Missouri administrator was advised of the progress of the Kansas administration, and knew, when he received the net balance of funds, that the Kansas administration was being wound up. Plaintiffs were bound by the notice of appointment of the Kansas administrator. That was what the notice was for. (R. S. 22-329.) Plaintiffs were barred in two years as all other creditors and claimants (other than infants, lunatics, prisoners, and persons abroad) because the statute so declares. (R. S. 22-702.) Notwithstanding the prolonged litigation over plaintiff's claims in Missouri, there was nothing to prevent them from asking the probate court of Leavenworth county to have the Kansas estate kept open and final settlement deferred. For such good cause shown, the probate court could and naturally would have extended the statutory time for winding up the Kansas estate. (R. S. 22-907.) It is a very simple matter to stop the running of the statute of limitations in the matter of presenting claims against estates if a claimant manifests the slightest diligence regarding his rights. (*Clifton v. Meuser,* 79 Kan. 655, 100 Pac. 645.)

It will thus be seen that statutory means is provided for the protection of every just right of plaintiffs, and the record is clear that the Kansas estate was administered and closed in seasonable and methodical compliance with law. Unless this court were prepared to rule that our own probate court's administration is to be held for naught, that our statutes which bar claimants who do not present their accrued claims within two years do not mean what they say, that rights of action not accrued need not be presented "at any

time before the estate is fully administered" (R. S. 22-729), and that the other pertinent provisions of the law of decedents' estates may be completely ignored, the Kansas administration of Loveland's estate must be upheld; and the pertinent statutes cited above must be interpreted, applied, and given effect according to their intendment. Not only does our law give adequate consideration to the rights of claimants against estates of decedents, resident or non-resident (R. S. 22-930), by due administration thereof through our probate courts, but it also makes provision to cover the situation where no Kansas administration is undertaken. Under such circumstances, the statute authorizes foreign executors and administrators by a very simple procedure in a probate court of competent jurisdiction to subject Kansas real estate of a nonresident decedent to the payment of debts or to dispose of it according to the terms of the decedent's will. (R. S. 22-832; *Thomas v. Williams*, 80 Kan. 632, 103 Pac. 772.)

In the absence of a Kansas administration of Loveland's estate, of course defendant Fox would have bought the land from the devisee subject to the possibility of its being needed to satisfy debts of Loveland. (*McLean v. Webster*, 45 Kan. 644, 26 Pac. 10; *Thomas v. Williams*, supra; *Allen v. Wilhoit*, ante, p. 387.) That is, the Kansas record of title would have been incomplete, and Fox would thereby have been put on his guard as to the possibilities and implications thereby suggested. But with a Kansas title record complete and fair on its face, that title coming down from some undisputed source to John T. Loveland, and showing the death of Loveland and the probate of his will in Leavenworth county, showing the devise of the property to the testator's niece, the appointment of a Leavenworth administrator, the record and final settlement and discharge of that administrator, all correctly and regularly done, Fox has a perfect right to rely on that record and on the assurance of the Kansas statutes under which that record was created, and to buy the property from the devisee of Loveland's will. And by that purchase Fox got good title against everybody of whose claims he knew nothing and concerning which the record not only gave no hint but affirmatively tended to assure him that his grantor's title and ownership were indefeasible.

The early case of *Collamore v. Wilder*, 19 Kan. 67, was analogous in some important particulars. It was there held:

"Where A. exhibits his demand against the estate of a decedent, by causing notice and statement of the amount due him to be served upon the administrator, and thereafter takes no further steps to have his demand allowed or established during the administration of the estate, and such administration continues over four years from the date of the letters of administration granted in the case; and said administrator makes a final settlement of such estate, which final settlement is approved by the probate court, and thereon the said administrator is finally discharged, and no claim is made of error, fraud, or concealment as to said final settlement, or the discharge of the administrator, A. cannot maintain his action in the district court against the heirs of the deceased, to whom lands have descended from him, to have his demand adjusted and allowed, and said lands sold to satisfy the same." (Syl. ¶ 1.) See, also, *Land Co. v. Perry*, 23 Kan. 188; *Shoemaker v. Brown*, 10 Kan. 383; *Anderson v. Beebe*, 22 Kan. 771; *Smith v. Bank*, 24 Kan. 530; *Klamp v. Winter*, 23 Kan. 705; *Freeman v. Waynant*, 25 Kan. 280; *Markson v. Kathman*, 29 Kan. 722; *Scroogs v. Tutt*, 23 Kan. 181.

In *Scroggs v. Tutt*, 23 Kan. 181, it was held:

"Where a party fails to exhibit his demand against an estate for over three years [two years when this estate was being administered, (R. S. 22-702), now one year, (Laws 1925, ch. 209)] after letters of administration have been granted (and he does not come within any of the exceptions), his claim is barred by § 81 of the executors' and administrators' act; . . ." (Syl. ¶ 5.)

In *Kothman v. Markson*, 34 Kan. 542, 9 Pac. 218, it was held:

"While the district court has jurisdiction over certain matters relating to the estates of deceased persons, it is an equitable jurisdiction, and in its exercise the court will be governed by the rules of equity, and the plaintiff, therefore, cannot successfully invoke the jurisdiction of the district court to enforce the payment of a claim against the estate of an intestate, where the statute has provided that the relief sought may be obtained in an ordinary legal proceeding in the probate court, and no special circumstances requiring the aid of equity are disclosed." (Syl. ¶ 3.) See, also, *Kothman v. Skaggs*, 29 Kan. 5; *Myers v. Kothman*, 29 Kan. 19; *Gafford v. Dickinson*, 37 Kan. 290, 291.

In the pertinent and instructive case of *McDaniel v. Putnam*, 100 Kan. 550, 164 Pac. 1167, it was said:

"Except by some provision in a will, requiring the keeping open of an estate longer than two years, the statute controls. A person has no power by an oral agreement with his creditor to establish a different rule as to the time for the presentation of a claim against his estate than the rule declared by the statute of 'nonclaim,' barring all demands against estates of deceased persons which are not presented within two years." (Syl. ¶ 2. See, also, *Milbourne v. Kelley*, 93 Kan. 753, 145 Pac. 816; *Clark v. Eaton*, 109 Kan. 574, and citations, 201 Pac. 71.)

In view of the foregoing, it must be held that the judgment of the trial court was correct; and it thus becomes unnecessary to con-

sider the rights of parties who cleared the Kansas property from the burden of incumbrances attaching to it at Loveland's death, but the student of this subject will discover that our law of subrogation is much more equitable and just than appellants conceive it to be. (*Johnson v. Moore,* 33 Kan. 90, 5 Pac. 406; *New v. Smith,* 94 Kan. 6, 145 Pac. 880; *Breyfogle v. Jackson,* 113 Kan. 373, 214 Pac. 779, and citations; *Crane v. Daniel,* 121 Kan. 3, and citations, 245 Pac. 1017.)

The other matters suggested in appellants' brief have been carefully noted, but they do not warrant further discussion. The judgment is affirmed.