FRANK A. BATES v. J. A. WIGGIN, *et al.*

1. NOTES — *Surety, May Maintain Replevin, When.* B. signed C.'s notes as surety, and in consideration of such signing, C. agreed to convey personal property to him. Afterward, W., as receiver of C., in another action, took possession of such personal property, C. being insolvent. *Held,* That B., after the maturity of the notes, was entitled to the possession of said property, and could bring an action in replevin at once to obtain possession of the same, and was not compelled to wait till he had actually paid such notes as surety.

2. ORAL MORTGAGE, *When Valid without Delivery of Property.* An agreement not in writing, to convey personal property as security, may be regarded as an oral mortgage, and when inquired into between the parties thereto, or between parties having no greater or different rights, will be held to be valid without the actual delivery of the personal property so conveyed.

*Error from Ellsworth District Court.*

ACTION by *Frank A. Bates* against *J. A. Wiggin,* personally, and as *Receiver* in the case of Oscar A. Burton *v.* H. B. Clark, *et al.,* pending in the United States circuit court for the district of Kansas, to recover the possession of the following property, to wit: 142 tons of hay (millet), at $6 per ton; 300 bushels of feed oats, at 25 cents per bu.; 285 bushels of seed oats, at 40 cents per bu.; 275 bushels of rye, at 25 cents per bu.; 1,320 bushels of corn, at 25 cents per bu.; amounting in value to $1,439.75. Trial at the October Term, 1885. The plaintiff introduced testimony substantially as follows: That in the year 1884, the aforesaid H. B. Clark had charge of the Clark & Burton ranch, in Ellsworth county, Kansas, whereon he had 6,000 or 7,000 sheep, 250 or 260 head of cattle, 15 or 18 horses, and about 180 hogs; that in the fall of 1884, to raise money to buy grain and feed to keep his said stock through the coming winter, Clark made an arrangement with the said *Frank A. Bates* to become his surety on certain notes to be by him given to the First National Bank of Ellsworth; that the money to be thus obtained was to be used by the said Clark to buy feed to be used on the ranch aforesaid; that the title

to and the ownership of the grain and feed to be bought should be and remain in said *Frank A. Bates* until the notes upon which he might become surety should be fully paid; that the aforesaid agreement between Clark and *Bates*, (which was not in writing,) was made for the purpose of securing *Bates* for signing as surety for Clark; that Clark gave two notes to said bank, one on November 8, 1884, for $1,000, due in thirty days, the other for $1,500, on December 17, 1884, due one day after date; that *Bates* signed both of said notes as surety, and that both were over-due when this action was commenced; that Clark began to buy said grain and feed in November, 1884, and continued so to do until he bought about $2,500 worth; that Clark fed out the millet hay and grain purchased, as it was necessary; and that on January 5, 1885, J. A. Wiggin, as receiver in said case in the U. S. district court, took possession not only of the feed and grain remaining, but also of the stock, and has kept possession thereof ever since. It appears that at the time *Bates* signed the notes as surety, he was insolvent although the bank then believed he was perfectly solvent; and it also appears that Clark was insolvent.

At the close of plaintiff's testimony the defendant interposed a general demurrer thereto, which the court sustained. Thereupon the court directed the jury to render a verdict in favor of the defendant, which was accordingly done. Judgment for defendant. New trial denied. The plaintiff brings the case here.

*Lloyd & Evans*, for plaintiff in error.

*J. B. Johnson*, and *J. D. McFarland*, for defendant in error.

Opinion by HOLT, C.: The first question that presents itself is, was the contract between Bates and Clark a conditional sale, or was it a mortgage on the property in controversy? The testimony is not uniform concerning the agreement. Some of the witnesses testify that the title should pass, and the property become absolutely the property of Bates at once. They all agree that the title to the property should be in Bates un-

til the notes were paid to the bank, but there is some testimony showing that the title to the property remaining should revert to Clark upon the payment of the notes, at once, and without any formal transfer. The testimony shows that Clark fed his stock out of a part of the property purchased. The writer of this opinion is inclined to believe that the agreement constituted a mortgage, yet there was testimony enough introduced tending to show that it was a conditional sale, so that it might have been a proper question for the jury to determine whether the transaction was a mortgage or a sale. (*Goodwin v. Kelly*, 42 Barb. 194.) If it had been a sale of the property, then certainly Bates, the owner of the same, could maintain his action for the possession of it.

The defendant contends that if it was an oral mortgage it would be void without an actual delivery of the property to Bates. We do not believe that claim is tenable. There is a distinction between mortgages and pledges, but there is no distinction, nor reason for a distinction, between oral and written mortgages in this respect. There is no provision in our statutes, as there is in some states, that the sale of personal property of a certain value, unaccompanied by delivery, shall be void unless a memorandum of the sale in writing be made and signed by one of the parties thereto. There is no question of purchaser or creditor arising in this action under the evidence brought here. It is simply a controversy between Bates and the receiver of H. B. Clark. Such receiver took the property of Clark subject to all existing equities and liens, and has no greater rights than Clark himself would have against Bates, and can interpose no defense that Clark could not. (*In re Gutta Percha Co.*, 17 How. Pr. 549; *Lorch v. Aultman & Co.*, 75 Ind. 162; High on Receivers, § 138.)

The testimony in this action tends to show that this transaction was entered into in good faith, and that the conditional sale or mortgage, whichever it may be, was given upon a sufficient consideration; and when inquired into between the parties themselves, or between parties having no greater or

different rights, we know of no rule, or reason for a rule, that would make delivery indispensable as between them any more than under a written mortgage. (Jones on Chattel Mortgages, § 2; *Morrow v. Turney,* 35 Ala. 131.) If a sale of chattels, not in writing, is valid without delivery, we know of no reason why an oral mortgage should be void between the parties thereto, without delivery.

In the view we take of this case, it is of very little importance whether the transaction was a conditional sale or a mortgage. If it was a mortgage, it was a transaction to secure two thousand five hundred dollars; and the statement of the values in the affidavit of the plaintiff shows the total value of the property claimed to be only one thousand four hundred and thirty-nine dollars and seventy-five cents, much less than the amount sought to be secured.

It is contended that if this transaction is a mortgage, the plaintiff could not maintain an action of replevin for this property until he had paid the notes, or some part thereof, upon which he was surety. Whatever the general rule may be, we believe where the surety has a mortgage on the property of his principal to secure him for signing his principal's notes, after the maturity of the debt, he is not bound to wait until he has actually paid as surety, but may have the mortgage foreclosed at once; and where the principal is insolvent, he may retain any funds in his hands to apply to the discharge of his liability.

The purpose of this contract between Bates and Clark was to hold Bates harmless against loss or damage by reason of his signing Clark's notes at the bank as surety. At the commencement of this action he was legally liable on the notes, and was entitled to obtain possession of the property given him to save him harmless, because he signed the same. (Brandt on Suretyship and Guaranty, § 193; Baylies on Sureties and Guarantors, 352; *DeCottes v. Jeffers, Cothran & Co.,* 7 Fla. 284; *Succession of Montgomery,* 2 La. An. 469; *Daniel v. Joyner,* 3 Ired. Eq. 513.)

It is recommended that the judgment of the court below be reversed.

By the Court: It is so ordered.

All the Justices concurring.