THE BANK OF HIGHLAND v. EVANS-SNIDER-BUELL COMPANY.

No. 478.   (57 Pac. 1046.)

1. ORAL CHATTEL MORTGAGE—*Essential Elements.*  An agreement, to constitute a oral chattel mortgage, must contain all the essential elements and features of a written mortgage.

2. ——— *Passing of Title to Creditor — Possession of Property.* In the agreement proved there is no contract that the property should be held or retained by the creditor until the amount of his claim should be paid. The contract does not amount to a mortgage; it is wanting in the essential agreement that the title to the property or specific interest should pass to the creditor subject to a defeasance.

Error from Wyandotte district court; HENRY L. ALDEN, judge. Opinion filed July 18, 1899. Affirmed.

*Bruno Hobbs*, for plaintiff in error.

*Miller & Morris*, for defendant in error.

The opinion of the court was delivered by

McELROY, J.: This action was commenced by the ·plaintiff in error, as plaintiff, in the district court of

Wyandotte county to recover from the Evans-Snider-Buell Company $1550, claimed as a balance due on a consignment of cattle sold by the defendant on commission. A trial was had before the court and a jury. The defendant interposed a demurrer to the plaintiff's evidence, which was sustained, and judgment was rendered against the plaintiff for costs. It excepted, and presents the case to this court for review.

John Sparks and Ratcliff Sparks, in November, 1892, were engaged in the cattle business as feeders, as Sparks Brothers; the plaintiff was a corporation engaged in the banking business at Highland, with one Beeler as cashier, and the defendant a corporation, with its principal office at Kansas City, Kan., engaged in the live-stock commission business. Sparks Brothers borrowed of the defendant $15,000, for which they executed their notes secured by a chattel mortgage upon 600 head of cattle. About that date Sparks Brothers entered into a contract with the plaintiff, whereby plaintiff agreed to furnish feed for the cattle during the winter and to fatten the same for the market, and to furnish money to buy hogs to run with the cattle. The plaintiff furnished money to buy feed for the cattle and hogs to run with the same, for which it claimed a lien on the cattle, or upon the proceeds thereof, for the amount so advanced, subject only to the mortgage of defendant.

In January, 1893, the bank demanded of Sparks Brothers a payment upon the feed bill, whereupon, with the knowledge of the bank, they borrowed $1500 of Evans-Snider-Buell Company, for which they executed their note, which amount the defendant paid to the bank as a partial payment of the feed bill

6—9 KAN. APP.

claimed by it, as a lien against the cattle, and the account was credited with the amount.

The first shipment of cattle was made to Evans-Snider-Buell Company by Sparks Brothers January 28, 1893, amounting to $5288.92, which was applied to the payment of the $15,000 mortgage ; the second shipment was made by Sparks Brothers April 14, 1893, the net proceeds being $3360.11, which was applied to the payment of the $1500 note with interest, the remainder to the payment of the $15,000 note ; on April 17, Sparks Brothers made another shipment, which amounted to $6972.18, which was applied to the payment of the $15,000 note. This left a balance due of $1415.35. The account of sales was rendered Sparks Brothers, showing each time the state of the account and deductions made.   On April 26, 1893, a shipment of the remainder of the cattle was made in the name of J. S. Beeler, consignor, to the defendant, the net proceeds amounting to $4721.25, and after deducting from the proceeds $1415.35, the amount due upon the $15,000 mortgage, the balance of the proceeds was deposited in the Metropolitan National Bank to the credit of plaintiff.

The plaintiff in error contends that the whole agreement with Sparks Brothers, that they should buy the cattle, that defendant should make the loan and take a chattel mortgage for $15,000, that plaintiff should advance money and hold the cattle and proceeds of their sale as security for its advance, was one contract, each part dependent upon the other ; that the defendant knew what Sparks Brothers' contract with the bank was, and its chattel mortgage and the unsecured note for $1500 were taken with full knowledge of that agreement ; and that the agreement between

Sparks Brothers and the bank amounted to an oral chattel mortgage.

The evidence does not show a contract amounting to an oral chattel mortgage or a lien of any kind against the cattle. The agreement amounts simply to a statement of the sources from which Sparks Brothers expected to repay the bank. The contract as stated by the parties, in substance, is:

"Ques. by Mr. Beeler : You may state what was said, and what you said, and what he said. Ans. Ratcliff Sparks said he wanted money; he wanted the Bank of Highland to furnish money to buy corn and hogs for these cattle, and I told him the bank would furnish this money, and that I wanted security above the Evans-Snider-Buell Company mortgage, which was $15,000.

"Q. Now state what he said in answer to your statement that you wanted this security. A. Ratcliff Sparks told me I could have everything over the $15,000.

"Q. State what he said. A. He said we should have every dollar above twenty-five dollars a head on each steer as they were shipped out.

"Q. (Ratcliff Sparks) How was the bank to be secured and paid? A. Why, me and Mr. Beeler agreed that I would, as soon as this first mortgage was paid off, I was to put all the funds in the bank, ship out all the cattle and hogs and stuff, and place the funds in the bank. I did so. I put in all these except a little that I used for expenses."

This would not constitute a valid mortgage if in writing. An agreement, to constitute a valid oral mortgage, must contain all the essential elements and features of a written mortgage. There was no agreement that the property should be held or retained by the bank until the amount of its claim should be paid, as was in the case of *Weil v. Ryus*, 39 Kan. 564, 18 Pac. 524; nor was there an agreement that the title

of the property should be held by the bank until its claim should be paid, as was in the case of *Bates v. Wiggin*, 37 Kan. 44, 14 Pac. 442. The contract is wanting in the essential agreement that the title to the property, or a specific interest, shall pass to the mortgagee, subject to defeasance upon the performance of conditions. There was no apparent intention to create a lien upon the property; simply an agreement to apply the proceeds to the payment of the indebtedness.

Suppose we concede that the plaintiff, by virtue of this agreement, had a lien upon the cattle, or proceeds thereof; it had agreed with Sparks Brothers that it would advance money to feed and carry the cattle in question until the same should be ready to market, and that the defendant's mortgage should be paid first. In January, 1893, the bank demanded of Sparks Brothers a payment on account of the feed bill; the cattle were not yet ready for market, and Sparks Brothers, with the knowledge of the bank, applied to the defendant for and procured a loan of $1500 upon their note with which to make a payment upon the feed bill, which amount was paid upon a draft drawn by Beeler, cashier, and signed by Sparks Brothers, and credited upon the feed bill claimed as a lien against the cattle. If the plaintiff had a lien against the cattle for the amount of money furnished for feed, the defendant should be in equity subrogated to the rights of the plaintiff to the extent of the money so advanced. (*Crippen v. Chappel*, 35 Kan. 495, 11 Pac. 453; *Bowling v. Garrett*, 49 id. 521, 31 Pac. 135.)

The judgment is affirmed.