JAMES H. CRAMER v. GEORGE W. ILER, *as Receiver, etc.*

No. 12,370. (66 Pac. 617.)

### SYLLABUS BY THE COURT.

1. JUDGMENT—*Lien on Realty.* The judgment of a court of record becomes a lien on the real estate of the debtor from the first day of the term at which it is rendered, and it does not become dormant or cease to operate as a lien until the expiration of five years after its rendition.

2. RECEIVERS—*Effect on Existing Liens.* A receiver is merely a ministerial agent of the court who holds the property or fund intact until the relative rights of claimants thereto can be determined, and although his possession is exclusive, he takes the property subject to all valid liens existing against it when he is appointed.

3. —— *Priority of Judgment Liens.* The priority of a judgment lien is not affected when property passes into the custody of the receiver, nor is it impaired by the fact that an execution thereon has not been taken out and levied before the expiration of one year next after its rendition, provided no other judgments have been rendered against the same judgment debtor before the receiver is appointed.

4. —— *Liens on Property in Custodia Legis.* After property passes into the exclusive jurisdiction and control of the court, no liens against it can be obtained, nor preferences acquired, by any action that claimants may take; and it is not subject to execution or interference without the permission of the court appointing the receiver.

Error from Anderson district court; SAMUEL A. RIGGS, judge. Opinion filed November 9, 1901. Division one. Reversed.

*Kirk & Bronston,* for plaintiff in error.

*Noah L. Bowman,* for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J.: This was an application for an order directing the receiver of the Bank of Garnett to pay a judgment in favor of James H. Cramer against the

bank or for leave to issue an execution thereon.   The application was made in an action brought by the attorney-general on October 24, 1895, for the purpose of having a receiver appointed to close up the affairs of the insolvent bank.   Prior to that time, and on March 15, 1894, Cramer recovered a judgment against the bank for $685.30, and a proceeding in error was instituted by the bank, which was pending for several years and resulted in an affirmance of the judgment on June 15, 1898.   (*Bank of Garnett v. Cramer*, 7 Kan. App. 461, 53 Pac. 534.)   A petition was then filed by the bank, asking the supreme court for an order certifying the case to that court for review, but it was denied.   Immediately afterward the present application for a preferential payment of the judgment or for leave to issue execution against the property on which the judgment was a lien was made, but the district court denied the application.   It held that while the judgment was a lien on the real estate of the bank when its property passed into the hands of the receiver, yet, as no supersedeas bond was given in the proceeding in error, Cramer might have caused the issuance and levy of an execution on the lands of the bank at any time before its insolvency and the appointment of a receiver, and that, as no execution was issued on the judgment for more than a year after its rendition, nor at any time until the receiver took possession, the judgment lost its preference as a lien on the property of the bank, and that Cramer must therefore share *pro rata* with the general creditors of the bank.   Of this ruling Cramer complains.

In support of the decision, it is urged that Cramer forfeited his preferential right by negligence and delay in failing to have an execution issued for a period of more than four years after his judgment was ren-

dered.   The statute is cited which provides that "no judgment heretofore rendered or which hereafter may be rendered, on which execution shall not have been taken out and levied before the expiration of one year next after its rendition, shall operate as a lien on the estate of any debtor to the prejudice of any other judgment creditor."   (Civil Code, § 468; Gen. Stat. 1901, § 4914.)   Attention is also called to the fact that the execution of the judgment was not stayed, and that there was no obstacle to the issuance of an execution; at least, there was none prior to the receivership.   It is true that no supersedeas bond was given, and there was nothing to prevent the issuance and levy of an execution until the custody of the property was taken by the receiver, which was more than one year after the rendition of the judgment.   It will be noted, however, from the statute quoted, that the failure of the judgment creditor to have an execution issued and levied within a year does not destroy the lien, but only subordinates it to other judgment liens of the same judgment debtor.   There were no other judgment creditors when the assets of the bank passed into the custody of the receiver, and at that time Cramer had a valid and subsisting judgment lien on the real estate of the bank which the receiver has since sold for $4615.

The judgment of a court of record becomes a lien on the real estate of the debtor from the first day of the term at which it is rendered, and it does not become dormant or cease to operate as a lien until the expiration of five years after its rendition.   (Civil Code, §§ 419, 445; Gen. Stat. 1901, §§ 4868, 4895.) Cramer's judgment was not dormant; it had not been extinguished, and was not barred by any statute of limitations when the receiver was appointed, nor when

this proceeding was begun.   It was then enforceable
and had priority as against the real estate over any
other liability of the bank.   Have the lien and priority
been lost since the property passed into the custody
of the court, and while Cramer's hands were tied so
that he could not have an execution issued and en-
forced against the bank's property?   The appointment
of the receiver did not determine any rights nor de-
stroy any liens.   His possession was the possession
of the law, and he was only the ministerial agent
of the court to receive, preserve and manage the
property until the rights, liens and interests of all
claimants could be adjudicated.   His possession was
exclusive, but he took it subject to all valid liens
existing upon the property at the time of his ap-
pointment.   Preferences are not lost nor priorities
disturbed by such change of custody, and while the
ordinary proceedings at law are not available to those
holding liens against the property in the hands of the
receiver, a court of equity which appoints the receiver
will protect the priorities and order distribution in
accordance with the relative rights of lien-holders and
other claimants.

After the property had passed into the exclusive
jurisdiction and control of the court, Cramer could
not have his lien enforced by an execution, nor could
he obtain any preferential right in the funds in the
hands of the receiver, except as it was allowed by the
court appointing the receiver.   After the appointment
no liens against the property could be obtained nor
preferences acquired by any action that claimants
might take.   It appears that other judgments were
obtained against the property of the bank after the
receiver was in possession, but these did not become
liens against the property, nor did they affect existing
liens.

Cramer v. Iler.

It is argued that the seizure or taking of the property by the receiver is equivalent to a levy of an execution, and that it deprived Cramer of his priority and preference to the same extent as if another judgment had been rendered against the bank more than a year after the rendition of Cramer's judgment and prior to the appointment of the receiver. The statute gives the custody of the receiver no such effect, and the general rule of law is to the contrary, that is, that liens are not lost or affected by the appointment of a receiver; that he merely holds the property intact until the relative rights of parties can be determined, and that when the property rightfully passes into the custody of the law it is not subject to execution or interference without permission of the court, and any attempt to seize or sell it by a third party without permission would be a contempt of the court having it in custody. (*Bates v. Wiggin*, 37 Kan. 44, 14 Pac. 442, 1 Am. St. Rep. 234; *Savings Bank v. Simpson*, 22 id. 414; *Railway Co. v. Love*, 61 id. 433, 59 Pac. 1072; *Walling v. Miller*, 108 N. Y. 173, 15 N. E. 65, 2 Am. St. Rep. 400; *American Trust etc. Bank v. McGettigan, Rec.*, 152 Ind. 582, 52 N. E. 793, 71 Am. St. Rep. 345, and note, 352; *Pelletier v. Lumber Co.*, 123 N. C. 596, 31 S. E. 855, 68 Am. St. Rep. 837; *Chicago Union Bank v. Kansas City Bank*, 136 U. S. 223, 10 Sup. Ct. 1013, 34 L. Ed. 341; *Roseboom et al. v. Whittaker, Warner et al.*, 132 Ill. 80, 23 N. E. 339.)

The Bowles proceeding against the bank, its stockholders, and some of its creditors, as well as the receiver, did not affect Cramer's rights, for the reason that he was not a party to the proceeding.

The judgment of the district court will be reversed, and the cause remanded with directions to enter judgment sustaining the priority of plaintiff's judgment,

and directing the receiver to pay the same out of the funds derived from the sale of the real estate on which the judgment was a lien.

SMITH, GREENE, ELLIS, JJ., concurring.