No. 27,305.

The Federal Land Bank of Wichita et al., *Appellees,* v. Fannie
S. Hanks et al., *Appellants.*

SYLLABUS BY THE COURT.

1. Subrogation—*Mortgagee Loaning Money to Take up Prior Mortgage Lien.*
   When a mortgagee loans money on real property for the purpose of taking
   up prior mortgage liens upon the land, his right of subrogation or of equi-
   table assignment of the mortgages so taken up depends upon the facts and
   circumstances of the particular case and upon principles of natural justice.
   Generally, where it is equitable that a person furnishing money to pay a
   debt should be substituted for the creditor, such person will be so sub-
   stituted.

2. Same—*Loan to Heirs to Take up Mortgage Against Estate—Subrogation as
   Against Administrator and General Creditors.* An owner of mortgaged real
   property died intestate, leaving a widow and adult children. The children
   conveyed their interest in the real estate to their mother. The mortgages
   on the real property were in part past due. It was necessary to renew them
   or get a new loan to avoid foreclosure. The widow procured a new loan
   for the purpose and which was used to pay existing mortgage liens on the
   land. *Held,* as against the administrator and general creditors of the de-
   ceased, the mortgagee in the last mortgage mentioned was entitled to be
   subrogated to the rights of the holders of the original mortgages.

Appeal from Leavenworth district court; James H. Wendorff, judge. Opin-
ion filed April 9, 1927. Affirmed.

*Lee Bond, W. W. Hooper, David Flynn,* all of Leavenworth, and *Charles
Blackmar,* of Kansas City, Mo., for the appellants.

*John E. Dumars,* of Topeka, *Kent W. Shartel, A. T. Blake,* both of Okla-
homa City, Okla., and *Samuel Feller,* of Kansas City, Mo., for the appellees.

The opinion of the court was delivered by

Harvey, J.:  This is a suit by the holder of a note secured by a
mortgage upon real property, the proceeds of which were used to
pay prior mortgage liens upon the land, to be subrogated to the
rights of the holders of such prior mortgages and to foreclose its
mortgage as so subrogated.  The material findings of fact and con-
clusions of law made by the trial court best tell the story of the
controversy, as follows:

"1. That plaintiff, The Federal Land Bank of Wichita, First Kansas-

---

Attachment, 6 C. J. p. 274 n. 81, 82.  Descent and Distribution, 18 C. J. pp.
940 n. 92, 947 n. 90, 99.  Subrogation, 37 Cyc. pp. 366 n. 5, 371 n. 29, 443 n. 26,
470 n. 80, 473 n. 95.

Oklahoma Joint Stock Land Bank of Kansas City, Kansas, the Live Stock State Bank of Kansas City, Missouri, Groves Brothers Real Estate and Mortgage Company, and Bradley, Alderson and Company, are and were at all times referred to in this suit, corporations, duly created and existing under and by virtue of law. That David W. Flynn is by appointment of the probate court of Leavenworth county, Kansas, administrator of the estate of C. Thompson Hanks, deceased; that William E. West is a special deputy commissioner of finance for the state of Missouri, in charge of said The Live Stock State Bank of Kansas City, Missouri; that George T. Bevan, T. N. Williams and I. B. Jackson constitute, and at the times in this suit referred to constituted, a partnership doing business under the firm name and style of Busy Bee Coal Company.

"2. That upon the 18th day of October, 1916, said Bradley, Alderson and Company, being indebted to the said Groves Brothers Real Estate and Mortgage Company in the sum of $2,500, and being the owner of the real estate next hereinafter described, to secure the payment of said sum, made, executed and delivered in writing to said Groves Brothers Real Estate and Mortgage Company its note and mortgage bearing date September 8, 1916, conveying the following-described real estate, situated in Leavenworth county, and state of Kansas, to wit: (Description follows of 225 acres of land.) That upon October 18, 1916, said Bradley, Alderson and Company being indebted to said Groves Brothers Real Estate and Mortgage Company in the sum of five thousand dollars ($5,000), as evidenced by its note bearing date September 8, 1916, and for the purpose of securing the payment of said sum, made, executed in writing and delivered to said Groves Brothers Real Estate and Mortgage Company its first mortgage upon the following-described real estate, situated in Leavenworth county, Kansas, of which real estate, said Bradley, Alderson and Company, was then the owner, to wit: (Description follows of 280 acres of land.) Said mortgages were each duly recorded immediately upon their execution.

"3. That upon January 12, 1917, for and in consideration of the sum of $22,725, said Bradley, Alderson and Company, by warranty deed dated December 23, 1916, duly sold, conveyed and warranted each and all of said real estate to C. Thompson Hanks; said warranty deed was immediately after its execution duly entered of record. In and by the terms of said warranty deed said C. Thompson Hanks, as a part of the consideration therefor, and of the purchase price of said real estate, did assume and agree in writing to pay the said indebtedness and mortgage liens above described as having been executed by Bradley, Alderson and Company to said Groves Brothers Real Estate and Mortgage Company, and being in the respective principal sums of $2,500 and $5,000.

"4. That under date of September 8, 1921, said C. Thompson Hanks and his wife, Fannie S. Hanks, made, executed and delivered to said Groves Brothers Real Estate and Mortgage Company certain instruments in writing whereby each of said indebtedness, notes and mortgages so held by said Groves Brothers Real Estate and Mortgage Company were extended for a period of five years from that date, or until September 8, 1926. Previous to that date, said debts both bore interest at the rate of six per cent per annum.

but by said extension agreements, said debts of $2,500 and $5,000 respectively bore interest from and after September 8, 1921, at the rate of 6½ per cent per annum. Sufficient of said extension agreements were duly entered of record on the 29th day of October, 1921, to apprise the world of the contents, effect and purpose thereof. That said indebtedness, note and mortgage were at all times herein referred to in full force and effect.

"5. That at the making and delivery of said warranty deed to said C. Thompson Hanks aforesaid, and to secure a portion of the purchase price of said real estate thereby conveyed, said C. Thompson Hanks and Fannie S. Hanks, his wife, made, executed and delivered to said Bradley, Alderson and Company their notes and mortgage lien, bearing interest at the rate of five per cent per annum, upon the real estate so conveyed to said C. Thompson Hanks as aforesaid, in the sum of $14,225, which mortgage was immediately duly entered of record. That upon August 21, 1922, said C. Thompson Hanks departed this life, intestate, in the state of Missouri, being then the owner of each and all of said real estate, and the same being then burdened with both of said mortgages to said Groves Brothers Real Estate and Mortgage Company, as aforesaid, and with the unpaid portion of said mortgage debt so made to and held by said Bradley, Alderson and Company, in the principal sum of $6,225, and an accumulation of interest thereon.

"6. That at his death, said C. Thompson Hanks left as his sole and only heirs at law, his widow, Fannie S. Hanks and his three sons, Ohler S. Hanks, Stewart T. Hanks and Edward C. Hanks, all adult persons, who thereby became immediately vested with the title to each and all of said real estate, in the proportions provided for by the laws of the state of Kansas. That thereafter, under date of September 25, 1922, said Ohler S. Hanks, Stewart T. Hanks and Edward C. Hanks did by their quitclaim deed duly purport to convey and lodge in said Fannie S. Hanks all their right, title and interest in and to said lands, and thus and thereby said Fannie S. Hanks succeeded to and became the holder of all the right, title and interest held in said land by said C. Thompson Hanks at his death. Said quitclaim deed to said Fannie S. Hanks was duly recorded on the 10th day of July, 1923.

"7. Upon November 29, 1923, said Fannie S. Hanks, by her written application, requested the First Kansas-Oklahoma Joint Stock Land Bank of Kansas City, Kansas, to loan to her $20,725, and to take as security for the payment thereof a first mortgage upon the real estate hereinbefore described. In and by said application the said Fannie S. Hanks represented, warranted and guaranteed that she was the owner of the legal and equitable title to said real estate, and would give said First Kansas-Oklahoma Joint Stock Land Bank of Kansas City, Kansas, a first lien thereon as security for the payment of said loan. Under date of December 16, 1922, said loan was approved by said First Kansas-Oklahoma Joint Stock Land Bank of Kansas City, Kansas, in the sum of $13,000, but said sum of money was not advanced by said bank until about the 30th day of July, 1923. In and by her application for said loan said Fannie S. Hanks agreed that said $13,000 would be used in the taking up of said encumbrances upon said land so held by Groves Brothers Real Estate and Mortgage Company and Bradley, Alderson and Company, as aforesaid.

"8. Under date of July 25, 1923, said Fannie S. Hanks, as a widow, executed

and delivered her promissory note in said sum of $13,000 to said First Kansas-Oklahoma Joint Stock Land Bank of Kansas City, Kansas, and with it executed and delivered to said bank a mortgage to secure the same, bearing date of July 25, 1923, and conveying as security the following-described real estate situated in Leavenworth county, Kansas, to wit: (Description follows of 505 acres of land.) Said mortgage was duly recorded on July 28, 1923.

"10. Prior to the 26th day of June, 1923, the First Kansas-Oklahoma Joint Stock Land Bank of Kansas City, Kansas, had not advanced the $13,000 applied for by the defendant Fannie S. Hanks, and as Mr. John Groves, of the Groves Brothers Real Estate and Mortgage Company, desired to leave Kansas City for the summer, and as the defendant Edward C. Hanks desired the matter with Groves Brothers be adjusted satisfactorily in some way before Mr. John Groves left Kansas City for the summer, Mr. Edward C. Hanks obtained a temporary loan from the New England National Bank on his own personal note for the sum of $3,115, that being the amount then due Groves Brothers Real Estate and Mortgage Company upon said $5,000 note and mortgage and $2,500 note and mortgage. The two notes and mortgages were delivered by the Groves Brothers Real Estate and Mortgage Company to the New England National Bank and said sum of $8,115 was paid by the New England National Bank to the Groves Brothers Real Estate and Mortgage Company. Neither of said notes or mortgages was marked 'canceled,' or 'paid,' or 'released,' but said transaction was made for the purpose of temporarily adjusting the matter with Groves Brothers Real Estate and Mortgage Company until said $13,000 could be received from the First Kansas-Oklahoma Joint Stock Land Bank of Kansas City, Kansas. The First Kansas-Oklahoma Joint Stock Land Bank of Kansas City, Kansas, had no knowledge of this transaction between Edward C. Hanks, Groves Brothers Real Estate and Mortgage Company and the New England National Bank prior to the time it advanced and paid said $13,000, the amount of its loan to Fannie S. Hanks, which it did on the 30th day of July, 1923.

"11. On July 30, 1923, at a time when each and all of said mortgage liens of said Groves Brothers Real Estate and Mortgage Company and Bradley, Alderson Company were in full force and effect, and at the request of said Fannie S. Hanks so to do, said First Kansas-Oklahoma Joint Stock Land Bank did advance and pay said $13,000, and at the request and direction of said Fannie S. Hanks did disburse and pay the same out to the following persons for the following purposes, to wit: To New England National Bank of Kansas City, Missouri, the sum of $8,167.76 to take up the said two mortgages of Groves Brothers Real Estate and Mortgage Company in the principal sum of $2,500 and $5,000 respectively, and the accumulated interest thereon. To Bradley, Alderson and Company, $4,669.39, to take up $4,000 of the principal remaining due and unpaid upon their said mortgage debt, which was in the original principal sum of $14,225 as aforesaid, and interest upon the entire balance of principal unpaid upon said mortgage, $17.09 necessary expense of inspection and appraisal of the land, and $40 necessary expense of fee for examination of the title thereto; $75.76 to said Fannie S. Hanks personally.

"12. After the payment and distribution of said $13,000 as aforesaid there

still remained due and unpaid of said principal sum of said Bradley, Alderson and Company's mortgage, the amount of $2,225 of the purchase price of said land. That sum and the note evidencing it were taken up and disposed of to one, Frederick H. Turner in the following manner: Said Bradley, Alderson and Company being then in process of liquidation, and said defendant Turner being president of said company, the board of directors of Bradley, Alderson and Company directed that the renewal note and mortgage be taken in the name of the defendant, Frederick H. Turner for the purpose of facilitating such liquidation. Accordingly a promissory note was executed by said Fannie S. Hanks, which was also signed by her three sons under date July 28, 1923, payable to the defendant, Frederick H. Turner, in the sum of $2,225 due one year after date thereof, and bearing interest at seven per cent per annum. Said note was given in lieu of said unpaid note of $2,225, executed by C. Thompson Hanks as a part of the purchase price of said land as heretofore stated, and to secure the payment thereof Fannie S. Hanks gave to said Turner her mortgage on the real estate hereinabove described bearing date July 28, 1923, which by its terms is made subject to the lien of the plaintiff herein in the sum of $13,000; and further recites that said note was the balance of the purchase price of said land. By the execution of the new note and mortgage it was not the intention of said Fannie S. Hanks, Bradley, Alderson and Company and Frederick H. Turner that the priority of the security of said indebtedness should be in any way changed or affected, but the new note and mortgage should be substituted for the old note and mortgage; that the note for $2,225 is unpaid and that default has been made in the mortgage securing said indebtedness, and said Frederick H. Turner is entitled to judgment for the amount due on said note and to have said mortgage foreclosed.

"13. Upon the 30th day of July, 1923, and after the payment and disbursement of said $13,000 in the manner and for the purposes aforesaid, the said Groves Brothers Real Estate and Mortgage Company, and said Bradley, Alderson and Company, each executed releases of their said mortgages, which said releases were entered of record upon July 31, 1923. Said releases were so executed and recorded with the expectation and intention of all the parties in interest that the rights then and theretofore existing thereunder in the holders thereof should not be lost or extinguished, but should pass to and be preserved in said the First Kansas-Oklahoma Joint Stock Land Bank of Kansas City, Kansas, its successors and assigns.

"14. That subsequently, on February 28, 1924, said the First Kansas-Oklahoma Joint Stock Land Bank duly sold, assigned in writing, transferred and delivered said $13,000 note and mortgage, together with all rights existing thereunder, to the plaintiff, the Federal Land Bank of Wichita, which bank thereby became, ever since has been and now is, the owner and holder of said note and mortgage and all rights existing thereby and thereunder. By said transfer said plaintiff acquired all of the rights which had previously been acquired under said note and mortgage by said First Kansas-Oklahoma Joint Stock Land Bank of Kansas City, Kansas, including all and whatever rights said First Kansas-Oklahoma Joint Stock Land Bank of Kansas City, Kansas, ever had or acquired to an equitable assignment of the said mortgages of

Groves Brothers Real Estate and Mortgage Company and said Bradley, Alderson and Company, and to be subrogated to such rights of said First Kansas-Oklahoma Joint Stock Land Bank of Kansas City, Kansas.

"15. That at the time of making said loan of $13,000 to said Fannie S. Hanks, the same indebtedness and mortgage liens so held by said Groves Brothers Real Estate and Mortgage Company, by virtue of said extension agreements executed by said C. Thompson Hanks and Fannie S. Hanks was not due, and said mortgagees were not in default; and the payment to said Groves Brothers Real Estate and Mortgage Company of $8,115, including the principal of $7,500, plus accrued interest, plus a bonus of $225 for the privilege of paying said notes before the due date. But the notes and mortgage lien held by Bradley, Alderson and Company were in default for nonpayment of interest upon the principal of said notes, and the terms of said mortgage had been violated by the mortgagees, and said mortgage was then subject to foreclosure at the will of said Bradley, Alderson and Company.

"22. That on the 2d day of July, 1923, suit was filed in the district court of Leavenworth county, of Leavenworth County, Kansas, entitled George Bevan et al., plaintiffs, vs. O. S. Hanks et al., defendants, No. 21377, by which action the plaintiffs therein sought to recover from the defendant Ohler S. Hanks the sum of $1,046 together with interest thereon from February 9, 1922, at the rate of six per cent per annum, upon a judgment which plaintiffs had theretofore and on the 9th day of February, 1922, recovered in and by consideration of the circuit court of Jackson county, Missouri. An attachment order issued out of said court on that day against the property of said Ohler S. Hanks, which attachment, upon July 2, 1923, was levied upon each and all of the aforesaid real estate covered by the said $13,000 mortgage of said First Kansas-Oklahoma Joint Stock Land Bank. Thereafter summons by publication was printed and given to said Ohler S. Hanks, and based upon that service, which was approved by the court, and not otherwise, judgment was rendered in said cause, in said district court of Leavenworth county, Kansas, upon November 13, 1923, for $1,056, together with interest thereon at six per cent per annum, and the costs of the action, amounting to $32.75. Upon the 27th of May, 1924, the sheriff of Leavenworth county duly offered said premises for sale, and upon that day, a bid was offered by I. B. Jackson, one of the plaintiffs in said action, and a defendant in this action in the sum of $1,775.16, which was the amount of judgment and costs and taxes then due and unpaid upon said real estate amounting to $520.84. On September 6, 1924, the court entered a decree of confirmation of said sale, and said land not having been redeemed from said sale as provided by law, a sheriff's deed was issued on December 8, 1925, purporting to convey said land to said I. B. Jackson.

"23. That at the time of the levying of said attachment upon said real estate the said Ohler S. Hanks had an undivided one-sixth interest in said real estate, as the deed he had theretofore and on the 27th day of September, 1922, executed purporting to convey all his interest therein by quitclaim deed to his mother, said Fannie S. Hanks, was void, for the reason it was made with the fraudulent intent to hinder, delay and defraud his creditors of their just and lawful debts.

"24. That said Ohler S. Hanks made no appearance in said suit in which

Federal Land Bank v. Hanks.

said attachment was issued and levied, and no service of any kind was had upon him other than by publication based upon said attachment as aforesaid.

"25. That at the time said I. B. Jackson bid in said property at said sheriff's sale, he believed the said Ohler S. Hanks had an interest in said real estate, and that in order to protect his interest in said land so purchased at said sale, he was compelled to pay all of the taxes on all of said real estate to the sum of $520.84; and that said sum was paid to the sheriff of Leavenworth county, Kansas, and was used by said sheriff in paying said taxes on said premises; that the payment of said taxes by said Jackson was done on good faith, and believed by him to be necessary at the time, and that by reason thereof he is entitled to a first and prior lien on said premises for the amount of said taxes so paid, with interest thereon from the 8th day of September, 1924, until paid, at six per cent per annum.

"26. On August 21, 1922, Edward C. Hanks was duly appointed administrator of the estate of C. Thompson Hanks, by the probate court of Jackson county, Missouri, and is at the time of the trial the duly qualified and acting administrator of said estate. That claims were duly presented to said Edward C. Hanks against the estate of C. Thompson Hanks, and the same were allowed to the amount of several thousand dollars; that said C. Thompson Hanks owned no property in Jackson county, Missouri, and that said estate was and is insolvent so far as the property of said estate in Jackson county, Missouri, was sufficient to pay the claims allowed against the estate; and that the proven claims against said estate in the probate court of Jackson county, Missouri, greatly exceeded the assets.

"27. On July 28, 1923, David W. Flynn was duly appointed administrator of the estate of C. Thompson Hanks, by the probate court of Leavenworth county, Kansas, and that he is the duly acting and qualified administrator of said estate. That at the time of his death said C. Thompson Hanks was seized and possessed of a farm consisting of about 505 acres of land in Leavenworth county, Kansas, more particularly described heretofore in these findings. That he also owned personal property located on said farm consisting principally of live stock and farm machinery. All personal property owned by said C. Thompson Hanks in the state of Kansas had been disposed of by Edward C. Hanks or some other unknown person or persons prior to the appointment of said David W. Flynn as such administrator, and that no personal property of any kind belonging to said estate came into the hands of said David W. Flynn as such administrator, and the only property owned by C. Thompson Hanks in the state of Kansas at the time of the appointment of David W. Flynn as such administrator was the farm of 505 acres described above in these findings.

"28. That said First Kansas-Oklahoma Joint Stock Land Bank at the time it made the loan of $13,000 to defendant, Fannie S. Hanks, had its agents and attorney examine the abstracts of title to said 505-acre farm described, and that it had knowledge and notice of the fact, from the abstracts examined and from the investigations of its attorneys and agents, that said C. Thompson Hanks was dead and that he died intestate while a resident of Jackson county, Missouri; that said First Kansas-Oklahoma Joint Stock Land Bank accepted the note and mortgage for $13,000 executed by Fannie S. Hanks to it as

security for said loan, with notice of the death of said C. Thompson Hanks, and that the above-described lands were liable under the laws of Kansas to be taken over and sold by the probate court of Leavenworth county, Kansas, for the payment of the debts of said C. Thompson Hanks at the time of his death.

"29. Claims against the estate of said C. Thompson Hanks amounting to more than $7,000 have been duly presented to David W. Flynn, as adminis-.trator of the estate of C. Thompson Hanks, deceased, and have been duly allowed by the probate court of Leavenworth county, Kansas, and now remain unpaid and unsatisfied.

"CONCLUSIONS OF LAW.

"1. The plaintiff. should have judgment for the total sum of $14,800.09, $9,427.05 of which will bear interest from this date at the rate of six and one-half per cent per annum, and the remainder, in the sum of $5,373.04, will bear interest from this date at the rate of five per cent per annum. Said $14,800.09 constitutes a first lien upon the real estate involved herein, and described in finding number 2 above, subject, however, to the lien of defendant, I. B. Jackson, for the amount of taxes and interest thereon, which he paid on said land as shown in finding number 25 above. $9,866.73 of said $14,800.09 is a first and prior lien on the 280 acres of land last above described in finding number 2, and $4,933.36 of said sum is a first and prior lien on the 225 acres of land described in said finding number 2; $6,284.70 of said $9,866.73 bears interest from this date at the rate of six and one-half per cent per annum, and the remainder thereof, $3,582.03, bears interest from this date at the rate of 5 per cent per annum; $3,142.35 of said $4,933.36 bears interest from this date at the rate of six and one-half per cent per annum, and the remainder thereof, $1,791.01, bears interest from this date at the rate of five per cent per annum; all subject, however, as aforesaid, to the lien of defendant, I. B. Jackson, for taxes paid by him, and interest thereon as aforesaid, as set forth in finding number 25 above.

"2. The defendant, Frederick H. Turner, should have judgment for the sum of $2,544.83, with interest thereon at the rate of five per cent per annum from this date until paid, which amount is a second lien on the real estate described in finding number 2 above, subject, however, to the lien of defendant, I. B. Jackson, for the amount of taxes and interest thereon, which he has paid on said land as stated in finding number 25 above.

"3. That the defendant, I. B. Jackson, has a first and prior lien on all the land described in finding number 2 above for $581.05, with interest thereon at six per cent per annum from this date until paid, for and because of the taxes he has paid on said land as stated in finding number 25 above; and that he is the owner of the undivided one-sixth interest of said Ohler S. Hanks in said land, subject, however, to the lien of the plaintiff as stated in conclusion number 1 above, and the lien of defendant, Frederick H. Turner, as stated in conclusion number 2 above, and subject to the claims and debts allowed against the estate of said C. Thompson Hanks, deceased, amounting to $8,350.67.

"4. The said real estate should be sold by the sheriff of Leavenworth county, Kansas, as provided by law, in the manner following: The whole of said land,

amounting to about 505 acres, be first offered for sale as a whole; that then the said sheriff receive bids upon the said 505 acres in separate parcels, one parcel consisting of the 225-acre tract aforesaid, and the other of the 280-acre tract aforesaid; that the said sheriff, upon receiving said bids, make return thereof into court within the period limited in his order of sale, to the end that same may be given consideration by the court and the court determine whether a sale has been made of said premises to the best advantage for all concerned therein; that the court retain this case for such further consideration, orders, judgment and decrees as may be just and proper herein."

Judgment and decree were entered in accordance with these conclusions. The appellants are David W. Flynn, the Kansas administrator of the estate of C. Thompson Hanks; William E. West, special deputy finance commissioner of Missouri, the principal creditor of such estate, and I. B. Jackson. The principal question argued is the right of the plaintiff, and of the defendant Frederick H. Turner, to subrogation under the facts found by the court. On the death of C. Thompson Hanks, intestate, his real property in Kansas descended to his widow and children subject to existing liens thereon, and subject to the payment of his debts—the claims of general creditors. (R. S. 22-108, 22-118.) Naturally, the debts secured by mortgages upon the real estate were liens thereon prior to the claims of general creditors, or of the administrator in their behalf. At that time the real property in question was encumbered as follows: 225 acres by a first mortgage of $2,500, the other 280 acres by a first mortgage of $5,000; and the entire 505 acres by a second mortgage of $14,225. To say nothing of accrued interest and taxes, if any, the aggregate mortgage liens were $21,725. These were liens superior to those of general creditors, or of the administrator in their behalf. By the time the $13,000 mortgage to the Land Bank was made the principal of the second mortgage lien had been reduced from $14,225 to $6,225. There was accrued interest, however, on both the first and second liens, which caused them to amount to about $15,000. The Land Bank mortgage was made to take up the prior mortgage liens on the land, and was used for that purpose. The change in the form of the mortgages did not increase the amount of the mortgage liens upon the land, except a few items of small amount, which the court did not include in the judgment for plaintiff. Appellants concede that so far as the *amount* of the mortgage liens on the land is concerned they are not injured by the change in the form of the mortgages. They can receive the value

22—123 KAN.

of the land in excess of the mortgages only, and this was not varied materially by the change made, nor at all by the court's decree.

But appellants contend they were placed to disadvantage by the change in the form of the mortgages for the reason that the new mortgages were liens upon the entire tract, while the old ones were in part on separate portions of the tract; that the mortgage to the Land Bank required a small payment on the principal semiannually in addition to the interest, and contained a clause by which its lien included rents, royalties, payments and delay moneys that may from time to time become due and payable on account of oil and gas leases, or mineral leases, existing or later made. These matters are not of sufficient importance to make an appreciable burden, if any at all, upon the interest of appellants in the land. There are no oil and gas or other mineral leases on the land either existing or in contemplation. It is true that the mortgage to the Land Bank is on the amortization plan, by which a portion of each payment applies upon the principal, but notwithstanding that, the semiannual payments are but little, if any, in excess of the interest payment on the previous mortgages. The fact that the new mortgages were liens upon all the land instead of a portion of it being upon portions of the land is no serious burden upon the claims of appellants, it being entirely conjectural or speculative whether the property would sell better as a whole or in two tracts. The fact that the principal mortgage lien upon the land was financed for a number of years to come instead of requiring. renewals at comparatively frequent intervals was perhaps an advantage rather than a disadvantage.

The real contention of appellants is that because these new loans were made to Mrs. Hanks after the death of C. Thompson Hanks, and the old mortgages released, that the creditors and the administrator of the estate of C. Thompson Hanks acquired the right to have the land sold for the payment of their claims free from the claims of these mortgages, or at least that their claims became superior to the claims of the mortgagees under the new mortgages. Before this change in the form of the mortgages was made appellant had no claim to this land except in the equity above the lien of the mortgage debts, then aggregating about $15,000. Their contention now is that by the change of the form of these mortgages this $15,000 indebtedness on the farm was wiped out, so far as they are concerned, and that their claims became in effect a first charge and lien

upon the land. Obviously a contention of that kind is so devoid of merit as to have but little appeal to a court of equity. If such a conclusion were reached it should be only because well-established rules of law compel it.

It is true that heirs take title to land subject to the debts of the deceased, and generally speaking, a stranger to the transaction, who voluntarily loans money to the heirs and takes security upon the land inherited by them, can take a lien only upon the interest in the land which such heirs could convey, and since the title of the heir is subject to the claims of creditors, the lien of the mortgage also would be subject to such claims. But this rule applies primarily to new mortgages, new liens created. The mortgagee in such an instance is sometimes spoken of as an intermeddler, a characterization which really doesn't mean much. The real test is this: Is one who loans money to an heir, and who takes a mortgage upon the inherited property as security, engaging in a new transaction, making a new loan upon the interest of the heir in the property? If so, his mortgage is subject to the claims of creditors, just as the title which the heir has in the property is subject to claims of creditors. But if the new loan made is simply a shifting of the form of security existing before the estate descended, and amounts to no more than a change in the form of the indebtedness existing at the death of the decedent, no injury is done, either to creditors or to heirs, with reference to their claims against the estate. They are substantially in the same situation as they were before the change in the form of the indebtedness was made, and hence there can be no equitable reason why the mortgagee in the new mortgage should not be subrogated to the rights of the mortgagees in the old mortgages.

As was well said in *Crippen v. Chappel*, 35 Kan. 495, 499, 11 Pac. 453:

"The right of subrogation or of equitable assignment is not founded upon contract alone, nor upon the absence of contract, but is founded upon the facts and circumstances of the particular case and upon principles of natural justice; and generally, where it is equitable that a person furnishing money to pay a debt should be substituted for the creditor or in the place of the creditor, such person will be so substituted."

This principle has been applied many times in this court. See *Farm Land Co. v. Elsbree*, 55 Kan. 562, 40 Pac. 906; *Deposit Co. v.*

*City of Stafford,* 93 Kan. 539, 144 Pac. 852; *Breyfogle v. Jackson,* 113 Kan. 373, 214 Pac. 779; *Newcomer v. Sibon,* 119 Kan. 358, 239 Pac. 1110; *Loveland v. Hemphill,* 122 Kan. 577, 586, 253 Pac. 606, and cases there cited. It is a legal principle which has general recognition (25 R. C. L. 1340). Among cases from other courts see especially *Heuser v. Sharman,* 89 Ia. 355; *Laffranchini v. Clark,* 39 Nev. 48, and the late case of *Dixon v. Morgan,* 285 S. W. (Tenn.) 558, with the informative note thereon in the March, 1927, University of Cincinnati Law Review, p. 238. We have examined the authorities cited by appellants. They state and apply correct rules of law applicable to the situations dealt with, but are not in point when applied to the facts in this case. It will not be necessary to analyze them in detail.

Appellants argue that if subrogation were made the decree should place the present mortgagee in the position of the holders of the old mortgages and in effect foreclose them if they are in default. This is exactly what the court did in this case. As to the amounts of the old mortgages, the rates of interest, even computing the amounts as to the separate portions of the land, the decree of the court followed the old mortgages, not the new ones. The decree indicates that this was computed with care, and no complaint is here made concerning that computation. But appellants argue that the old first mortgages on the land were not in default at the time the Land Bank mortgage was made and were not due at that time, having by an extension agreement been extended until September 8, 1926. While this is in a measure true, even at the time the Land Bank mortgage was made, there was deferred interest on these first mortgages. Possibly they could have been foreclosed. But passing that, there had been no payment of interest made since the date of the Land Bank mortgage, and at the time this action was brought in January, 1925, because of default of payments, the first mortgages would have been subject to foreclosure, just as the Land Bank mortgage was at that date; hence there is no error in the decree of the court, which in effect decrees a foreclosure of them.

Appellants specifically urge that there should have been no subrogation of the $2,500 note and mortgage made to Frederick H. Turner. The court finds, and the finding is amply sustained by the evidence, that this was a part of the Bradley, Alderson and Company mortgage, that it was not a new loan in the sense that there

Federal Land Bank v. Hanks.

was any new consideration, but simply a continuation of a part of the old debt; that it was taken in the name of Turner because the corporation of Bradley, Alderson and Company was in liquidation, and for its benefit, and that Bradley, Alderson and Company, by releasing its old second mortgage upon the land, and taking the new one for $2,225, did so without a view of changing the nature or priority of its lien, and that this was the understanding of all the parties to the transaction. There is no error in this respect.

The appellant, I. B. Jackson, makes the additional point that the lien, by the attachment suit against Ohler S. Hanks, should have been decreed to have been superior to the claims of general creditors. There is no merit in this contention. The interest of Ohler S. Hanks in this land as an heir of C. Thompson Hanks was subject to the claims of creditors of the estate of C. Thompson Hanks. He got nothing ultimately in this land until the claims of such creditors were satisfied. An attachment upon real property reaches only the real interest of the party in such property, not his apparent interest. The court correctly held the lien of the attachment to be inferior to the claims of general creditors of the estate of C. Thompson Hanks. The court correctly gave I. B. Jackson a first lien as against all the parties for the taxes he had been compelled to pay upon the land, and no complaint is made of that ruling.

Finding no error in the case, the judgment of the court below is affirmed.