## No. 28,729.

THE FEDERAL INTERMEDIATE CREDIT BANK OF WICHITA, *Appellant*, v. LEOTA HOWARD, as Administratrix, etc., et al., *Defendants;* CHARLES W. JOHNSON, Receiver, *Appellee*.

(284 Pac. 380.)

Opinion filed February 8, 1930.

*C. C. Davidson*, of Wichita, and *Ed T. Hackney*, of Wellington, for the appellant.

*E. J. Taggart* and *John Bradley*, both of Wellington, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: This appeal involves the question of the right of a bank rediscounting a forged note assigned to it by another bank to an equitable trust in the proceeds of a life insurance policy held by the assigning bank as security to it for the indebtedness of

the deceased whose name had been forged to the note rediscounted by the plaintiff bank. The action was brought on the rediscounted note and also on the debt against the receiver of the bank which assigned the note, and against the estate of the supposed maker of the note for judgment for the amount thereof; also for a finding of an equitable trust in and right of subrogation to the funds derived by the receiver of the failed bank from the life insurance policy assigned by the supposed maker of the note to that bank as security for his indebtedness thereto. The receiver filed, in addition to a general denial, a cross petition to recover judgment against the estate of the deceased upon a note for $4,012, with interest, and for the payment of that amount out of the life insurance money now in the hands of the clerk of the district court. The trial court found that the note rediscounted was a forgery, and a renewal of others that had been forged, and rendered judgment against the receiver for the amount thereof with interest, but denied the claims of the plaintiff for an equitable trust in and subrogation to the proceeds of the life insurance policy. From this judgment the plaintiff appeals. The court also found in favor of the estate of the party whose name had been forged to the notes, and from that finding and judgment no appeal has been taken; and, also, found in favor of the receiver and against the estate on the $4,012 note and ordered the clerk to pay that amount with interest to the receiver out of the life insurance money.

The judgment rendered against the receiver of the failed bank would, of course, allow the claim of the appellant to prorate in the distribution of the salvage of the bank. The appellant does not ask that its claim be accorded a preference, but maintains that under the findings of the trial court it is entitled to an equitable trust in the life insurance money coming into the hands of the receiver because the findings show that the present indebtedness of the estate of the deceased for which the life insurance money is to be turned over to the receiver is a part of the original indebtedness of $6,000 to secure which the policy was assigned, and out of which original transaction with the genuine note of $6,000 there evolved the later notes that were forged and the $4,012 genuine note that came into the hands of the receiver. On the contrary, the appellee insists that the bank books show no connection whatever between the $6,000 note and the present indebtedness of $4,012 with interest; that the last note was given for a distinctly new and independent

loan without any antecedent connection or history. No record of it was found on the books. It was simply found among the papers in the bank when the receiver took charge of the affairs of the bank. And appellee strenuously insists that the findings nowhere show any connection between the $6,000 note and the $4,012 note.

We think the sole question in this case is whether the indebtedness represented by the $4,012 note now ordered to be paid the receiver out of the insurance money is a part of the original indebtedness of $6,000. No one finding of the court entirely covered this question, but the various parts of these findings completely show the connection between the $6,000 note and the $4,012 note and that the latter note, at the time it was given, represented the unpaid part of the $6,000 note. Finding No. 5 tells of the execution of the $6,000 note by Jerry Howard on May 4, 1923, and finding No. 10 of the assigning of the $10,000 life insurance policy to secure the payment of the same. Finding No. 6 tells of the rediscounting of the first forged note of $5,000 on May 8, 1923, and the receiving of $5,000 cash less discount by the Mulvane bank, and finding No. 7 says it was not credited on the genuine $6,000 note. Findings Nos. 7 and 8 show the crediting of two payments of $1,000 each on the $5,000 note, reducing it to $3,000. Finding No. 8 shows these two payments of $1,000 each were derived from public sales of personal property of Jerry Howard and the court especially finds in the last sentence of that finding that "Apparently the proceeds of these sales were credited in the reduction of the $6,000 note." Finding No. 11 tells of the receiver finding among the papers in the bank when he took charge of it the $4,012 note, and this is the acknowledged indebtedness of the estate to the Mulvane bank with interest, and a few other items, making a total at the time of the trial of $5,306.84; and in finding No. 13 it is stated that the insurance policy was used to cover this indebtedness to the failed bank.

With the books of the bank kept, as the court found, for the convenience of the cashier, and unworthy of credence, the finding among the papers, without any record of it, of the $4,012 note, after $2,000 had been paid on the genuine note of $6,000, is a closer connection than might reasonably be expected under such circumstances. There is nothing in the findings to hint at there having been a new loan to Howard when the $4,012 note was given, nor of anything having been paid by the deceased on the $6,000 note except the two payments of $1,000 each. The court's concluding sentence in finding No. 8 is

substantially all that could be asked to show the connection between the two notes by applying the payments to the reduction of the larger and leaving unpaid the exact amount of the smaller within $12. The findings also show, Nos. 5 and 6, the direct connection between the original indebtedness of $6,000 and the first $5,000 note that was forged and sent by the Mulvane bank to be rediscounted. The $6,000 note, dated May 4, was offered for rediscount and not accepted by plaintiff because it was an excess loan for the Mulvane bank and was returned for that reason only.. Then four days later the $5,000 forged note was sent and accepted. The record shows that the $6,000 note was procured from the administratrix when it was introduced in evidence as having been among the papers of the deceased. The findings further show, Nos. 7 and 8, that the $2,000 paid by Howard from the sale of his personal property served to reduce by that amount not only the genuine note of $6,000 to $4,000, but also to reduce the forged $5,000 note to $3,000. If anything were lacking to show a connection between these two items it is furnished by this simultaneous reduction of both notes at the same time and with the same payments.

It is urged that the failure of the trial court to make definite findings along certain lines as desired by the plaintiff is in effect a finding to the contrary, and that a general finding like a verdict is necessarily the other way. But here we can gather from the findings all that appears to be necessary to show the required connection between these transactions, and there was no general finding in the case like a verdict would have been. The court determined the rights of the parties as a matter of law based upon the findings of fact in its conclusion of law No. 5, as follows:

"The court further finds that the plaintiff is not entitled to be subrogated to the claim of the bank and its receiver on the proceeds of the life insurance policy held by the bank as collateral to the indebtedness of Jerry Howard to the bank."

We have before us the findings of fact as made by the trial court and feel constrained to make a different conclusion of law from that made by the trial court. Even if the trial court did refuse to make further and more definite findings along certain lines in issue, it cannot be concluded the finding was in effect otherwise when there was already in the findings sufficient to show the necessary connection. There was only one assignment of the life insurance policy and that was made when the $6,000 note was given as shown in finding No. 10. If there was no connection between that note and

the $4,012 note, the insurance policy should have been returned to the deceased when the $6,000 note was returned.

We do not understand the findings to show that there was no debt of Howard at the bank from May 8, 1923, until the giving of the $4,012 note, but that the unreliable books did not show any, for on the contrary the $2,000 was paid after May 8, 1923, and apparently credited on the forged note.

As stated above, the main question at issue in this appeal is whether or not the findings of fact made by the trial court show the necessary connection between the three or four items in the transaction to establish a trust relationship, when the court instead of grouping such matters into one such finding made several disconnected findings of the different features involved in such relationship. We have recited and grouped such findings, and they appear to us to lack nothing as to facts to show the necessary connection. With this view as to the meaning and effect of the findings of fact, we think it must follow that the conclusion of law No. 5 was wrong.

The principles of equity seem to us to apply to the situation in this case as equity regards as having been done that which should have been done. A great injustice has been done the plaintiff bank by the fraud of an officer of the Mulvane bank. The receiver, although perfectly innocent of every reflection, stands in no higher or better position than would the bank itself if it had not failed. (*Cramer v. Iler*, 63 Kan. 579, 66 Pac. 617.)

Had the Mulvane bank remained solvent and been confronted with the facts in this case occasioned by the misconduct of its cashier, no one would hesitate to say what justice and equity would require under the facts of the case.

"Subrogation or equitable assignment is based on principles of natural justice and essential fairness without regard to form—its object being prevention of injustice." (*Deposit Co. v. City of Stafford*, 93 Kan. 540, syl. ¶ 2, 144 Pac. 852.)

"The notes and a mortgage were procured to be given through the active fraud of its cashier. As he was acting for the bank, and as the bank received and appropriated the fruits of the fraudulent transaction, it is responsible for the fraud." (*Graves v. O'Brien*, 111 Kan. 320, syl. ¶ 6, 207 Pac. 198.)

"In the absence of any countervailing equities, one who makes a loan in innocent reliance upon a forged real-estate mortgage is upon the principle of subrogation entitled to subject the land to the repayment to him of such part of the money lent as was used in taking up existing valid liens." (*Newcomer v. Sibon*, 119 Kan. 358, syl. ¶ 1, 239 Pac. 1110. See, also, *Everston v. Central Bank*, 33 Kan. 352, 6 Pac. 605; *Federal Land Bank v. Hanks*, 123 Kan. 329, 254 Pac. 1040; *Olson v. Peterson*, 88 Kan. 350, 128 Pac. 191.)

We conclude that the proceeds of the life insurance policy assigned to the Mulvane bank to secure the indebtedness of the deceased is a trust fund in the hands of the receiver of the bank in favor of the plaintiff to the extent of the $3,000 claim of debt held by the plaintiff, and that the plaintiff is entitled to be subrogated to the claim of the bank thereon to the extent of plaintiff's claim.

The judgment is reversed with direction to render judgment for plaintiff.